395 So.2d 902 (1981)
S. J. MILLER, Plaintiff-Appellee,
v.
OLINKRAFT, INC., Defendant-Appellant.
No. 14443.
Court of Appeal of Louisiana, Second Circuit.
February 16, 1981.
Rehearing Granted Without Argument March 27, 1981.
*903 Shotwell, Brown & Sperry by Walter C. Dunn, Jr., Monroe, for defendant-appellant.
Law Offices of John S. C. Massey by David G. Haynes, West Monroe, for plaintiff-appellee.
Before HALL, JASPER E. JONES and FRED W. JONES, Jr., JJ.
En Banc. Rehearing Granted Without Argument March 27, 1981.
FRED W. JONES, Jr., Judge.
Plaintiff employee filed suit on February 20, 1979 against defendant employer for workmen's compensation benefits, penalties and attorney fees, for an occupational injury allegedly occurring in early 1977 or, alternatively, for the aggravation in January 1979 of a pre-existing condition. Defendant denied liability and filed an exception of no cause of action based upon a plea that the claim was barred by two years peremption.[1]
The trial court overruled defendant's exception of no cause of action and rendered judgment in favor of plaintiff, awarding workmen's compensation benefits for partial disability resulting from a job related injury occurring in early 1977, but rejected the demand for penalties and attorney fees.
Defendant employer appealed, contending that the trial judge erred in (1) finding that plaintiff had proved the occurrence of an on-the-job accident in 1977 and (2) ruling that the running of the two year prescriptive period was interrupted by defendant's actions which lulled plaintiff into believing that "he was being taken care of."
Plaintiff answered the appeal, asserting that the trial judge committed error in not finding that the claimant was totally and permanently disabled.
Plaintiff, age 44, was employed at defendant's paper manufacturing plant in West Monroe in 1971. His job assignment was that of waste paper baler, which involved the collection of defective paper bags from bag-making machines, baling those bags, and rolling them on dollies back to machines for recycling. Since the bales weighed between 900 and 950 pounds, plaintiff's duties entailed strenuous physical activity over a period of several years.
Claim of 1977 Job-related Injury
Plaintiff testified that he was working for defendant on a night shift in January 1977 when, picking up waste paper out of a buggy, he felt a pain in his back of such intensity that he was forced to his knees. After the initial pain subsided, plaintiff went to the medical center maintained by defendant for its employees. An attendant put hot towels on plaintiff's back and followed that with an electric pad. These measures relieved his pain and plaintiff returned to finish his shift. No fellow workers *904 witnessed the incident nor did plaintiff make an accident report to his employer.
When his shift ended plaintiff went home, applied a heating pad to his back, and took some of the pain pills he had received at the medical center. He returned to work the next evening. Plaintiff stated that his back stopped hurting after two or three days but that, a week or so later, his left leg started hurting. Returning to the medical center, he received additional medication for the pain. The attendant advised plaintiff to consult his personal physician. After several visits, that physician, Dr. Ronald Woods, referred plaintiff to Dr. Myron Bailey, an orthopedic surgeon, who saw plaintiff on February 14, 1977. At Dr. Bailey's recommendation plaintiff was hospitalized at the end of February 1977 and a myelogram performed, which revealed that plaintiff was suffering from a protruding lumbar disc. An operation for the removal of this disc was performed by Dr. Bailey on March 31, 1977.
Plaintiff testified that, upon learning of the results of the myelogram, he went to defendant's personnel office to give notice of his physical condition and inability to work. On March 8, 1977 he completed an application for benefits under a group accident and sickness insurance policy which defendant carried with Prudential Insurance Company, which application contained a statement that the illness was not job related. Plaintiff's explanation for this action was that he needed immediate financial relief and was informed by defendant's personnel office worker that defendant's opposition to paying workmen's compensation would result in a delay of at least six months before he could receive any funds.
Plaintiff's testimony concerning his injury while working for defendant in January 1977 was corroborated by the statement of his wife that plaintiff came home complaining about his back injury, describing to her how it had happened.
Dr. Ronald Woods, plaintiff's family physician, testified by deposition that plaintiff consulted him with reference to his leg pain on January 18, January 22 and February 1, 1977. Dr. Woods prescribed medication to relieve the pain. Since there was no apparent improvement, plaintiff was referred to Dr. Bailey, a specialist.
Dr. Bailey, also testifying by deposition, related that he first saw plaintiff with reference to the complaint of pain in his left leg on February 14, and again on February 24, and February 27, 1977. Although he had been off from work for two weeks, the pain was continuing. For that reason a myelogram was deemed advisable. That test revealed a protruding 4th lumbar disc with some nerve root encroachment on the 5th lumbar disc. Dr. Bailey suggested that plaintiff remain off from work for several additional weeks. When the leg pain was not alleviated by bed rest and conservative treatment, surgery for removal of the problem disc was performed on March 31, 1977 and plaintiff was discharged from the hospital on April 6, 1977. He was not able to return to work with defendant until May 2, 1978.
Dr. Bailey conceded that plaintiff was unable to relate to him a specific precipitating cause of his ailment but did state that his work required considerable lifting and stooping. It was Dr. Bailey's opinion that the abnormal disc "may very well and probably was due to trauma."
La.R.S. 23:1031 provides that workmen's compensation benefits are due employees who receive "personal injury by accident arising out of and in the course of his employment." (emphasis added).
Although the statutory definition of "accident" is rather restrictive[2], our jurisprudence has given an extremely broad interpretation to the word, holding that strain or exertion can supply the necessary violence. Dortch v. Louisiana Central Lumber Co., 30 So.2d 792 (La.App. 2d Cir. 1947). Furthermore, "when the performance of the usual *905 and customary duties of a workman causes or contribute to a physical breakdown, the statutory requirements for an accidental injury are present." Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972).
In this case the trial judge apparently accepted plaintiff's testimony relating the onset of pain in his back while on the job in January 1977 and concerning his immediate visit to the medical center. It is undisputed that the claimant had been engaged in strenuous labor for several years prior to that time and that he was disabled by a protruding disc in 1977. Plaintiff's wife told of his immediate report to her of the January 1977 back injury. There is also the fact that plaintiff consulted his family physician within a relatively short time after the occurrence. Therefore, there was ample evidence that the performance by plaintiff of his usual and customary duties either caused or contributed to the disc problem. This falls within the purview of "accident" as construed by our jurisprudence.
The thrust of defendant's argument on this issue is that plaintiff impeached himself by reciting in his application for accident and sickness insurance that his illness was not job related. Although the trial judge did not specifically address this issue in his written opinion, we assume that he accepted the claimant's explanation for his statement in the insurance application. The assessment of witness credibility is an important trial court function. We cannot say that the trial judge was wrong in his evaluation of the testimony in this case, nor did he manifestly err in concluding that plaintiff discharged his burden of proving an occupational accident in early 1977.
Applicability of Two Year Period of Prescription
La.R.S. 23:1209 provides generally that claims for workmen's compensation benefits prescribed after the lapse of one year from the date of the accident, specifies certain exceptions, and then adds:
"... but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident."
Defendant argues that the alleged accident causing plaintiff's back condition must have occurred prior to his visit to Dr. Woods on January 18, 1977. Since this suit was not filed until February 20, 1979, running of the two year prescriptive period barred plaintiff's claim for benefits.
The trial judge found that plaintiff's occupational accident occurred more than two years before this suit was filed. However, in overruling defendant's exception based upon the plea of prescription, the trial judge stated that plaintiff was led by defendant to believe that he was "being taken care of" because of the disability payments received by plaintiff under defendant's group accident and sickness policy with Prudential.[3]
In the case of Landry v. Ferguson, 279 So.2d 185 (La.1973), the Louisiana Supreme Court held:
"An employer who lulls an injured employee into a false sense of security by promising to `take care' of him cannot later interpose a plea of prescription to the plaintiff's untimely suit for workmen's compensation benefits...."
For this exception to defeat the plea of prescription, the claimant "must establish that words, actions or inaction on the part of the employer or insurer induced him to withhold suit until the time for prescription had passed." Malone & Johnson, Workers' Compensation, Sec. 384, in 13 La.Civ.L. Treatise 261 (2d Ed.1980).
The court in Drane v. City of New Orleans, 328 So.2d 752 (La.App. 4th Cir. 1976), pointed out:

*906 "A statement by the employer's representative that the employee has no valid claim is entirely different from one that the employee will be taken care of [as in Landry v. Ferguson, La., 279 So.2d 185 (1973)], or one that compensation will be paid without suit. The latter statements to the employee indicate that the employer has recognized the claim, and an employee alleging late filing on account of such statements would assert a cause of action to estop the employer from pleading prescription.
"However, a statement by an employer's representative that the employee has no valid claim is the equivalent of the employer's denial of the claim. Such a statement would serve to notify the employee that he cannot rely on receiving compensation without suit and that he must seek legal advice or pursue his claim otherwise than through amicable settlement with the employer."
On this point, plaintiff testified that, upon his visit to defendant's personnel office in March 1977, he told the office worker that he had no money to pay bills and wanted to draw workmen's compensation. He asserted that he was informed that "if I signed up for workmen's compensation, Olin would fight it, and it would probably take six months from the lawsuit to get anything." However, it was allegedly pointed out to him that he could start drawing disability benefits under the Prudential policy immediately. Therefore, because of his financial plight he chose the latter. Plaintiff conceded that, at the time, he understood the difference between the two types of benefits, i. e., workmen's compensation benefits and accident and sickness insurance.
Although defendant's personnel office worker denied making this statement to plaintiff, the trial judge obviously accepted plaintiff's testimony as the more credible. Even so, we do not find that these words induced plaintiff to withhold suit for compensation benefits until the two year prescriptive period had elapsed. On the contrary, plaintiff was placed on notice that defendant would resist a claim for workmen's compensation. Rather than lulling plaintiff into a false sense of security, this should have alerted him to the necessity of consulting an attorney for the purpose of taking legal action. Consequently, we conclude that the trial judge erred in overruling defendant's exception of no cause of action; that the plea of prescription was valid and should have been sustained to bar the claim for workmen's compensation based upon the 1977 accident.
Alternative Claim of Aggravation of Pre-existing Condition in 1979
After his disc operation in March 1977, plaintiff remained under the care of Dr. Bailey until his discharge to return to work on May 2, 1978. Although at that time plaintiff still complained of recurrent leg pain, Dr. Bailey could find no objective basis for the complaint and recommended that plaintiff attempt to return to his former duties.
Plaintiff reported back to defendant for work, presenting the note from Dr. Bailey discharging him from medical treatment. He resumed his former duties on May 3, 1978 and continued his work as a waste baler until the latter part of January 1979 when his job was changed to that of a baler, which involved lifting bales of paper bags and placing them on pallets. Plaintiff testified that after working one night on this new job, his back and left leg started hurting him. As a result he was compelled to remain in bed for two days before returning to work. He worked two more nights and then, because of continuing pain, returned to Dr. Bailey for examination and treatment. Dr. Bailey saw plaintiff on February 2, 1979 and, on the basis of that examination gave plaintiff a note with instructions to defendant that plaintiff's work should be restricted to light duties. Defendant's response was that it had no light work for its employees. Therefore, plaintiff did not return to his employment with defendant after February 2, 1979, nor has he worked for anyone else, contending that he is unable to do any work involving lifting or stooping.
*907 Dr. Bailey confirmed that he last examined plaintiff on February 2, 1979 and recommended that he perform light work only. Asked if heavy lifting and stooping could have aggravated plaintiff's condition to the extent that he was unable to continue his work, Dr. Bailey replied in the affirmative.
Mrs. Miller corroborated her husband's testimony that after working one shift on the new job plaintiff had to remain in bed two days because of his apparent pain and discomfort.
It is well established that workmen's compensation is payable when an occupational accident aggravates or accelerates a pre-existing condition and produces disability. Chism v. Kaiser Aluminum & Chemical Corporation, 332 So.2d 784 (La.1976); Johnson v. Travelers Ins. Co., 284 So.2d 888 (La.1973); Duncan v. R. J. Reynolds, Inc., 305 So.2d 707 (La.App. 4th Cir. 1974).
In the Chism case the doctor's testimony was that plaintiff's condition, though aggravated by his work over a period of time, was not caused by any specific incident. Addressing this issue, the court commented:
"It is true that the record does not establish which of the several occupational incidents finally ruptured the disc. We find that it does establish, however, that one or more of the accidents on the job aggravated plaintiff's back condition to the extent that he became disabled. Thus, under the jurisprudence, plaintiff has discharged his burden of proof."
The claimant in Scanlan v. Bernard Lumber Co. Inc., 365 So.2d 39 (La.App. 4th Cir. 1978) underwent a laminectomy in 1974 and resumed his employment with the defendant as a superintendent in 1975. On May 1, 1976, because of a strike, plaintiff had to help run the mill by engaging in heavy manual labor. After several days of this labor he began to suffer from back pain which increased in severity until he was compelled to quit work on June 16, 1976. Noting that there was no evidence of a single traumatic event which precipitated the claimant's condition, the court found that under our liberal interpretation of "accident" the plaintiff had sustained a series of minor accidents which cumulatively produced his disability injury.
In Hayes v. TAC Amusement Co., Inc., 349 So.2d 340 (La.App. 4th Cir. 1977), the defendant argued that the claimant's knee condition was due to an accident in 1970 rather than a 1971 accident. Rejecting this contention the court stated:
"... plaintiff testified that he resumed all of his duties about three months after the first accident and continued with them until the second accident. This uncontradicted testimony provided a sufficient basis for the trial judge to conclude that plaintiff's knee condition was at least aggravated by the second accident, and that his disability was the result of this aggravation entitling him to compensation."
In our case the trial judge made no finding of fact on this question because of his determination that plaintiff was due workmen's compensation benefits based on the 1977 accident. Consequently, we must decide, upon the basis of our examination of the record, whether the claimant has discharged his burden of proving the alleged 1979 aggravation of a pre-existing back condition by a preponderance of the evidence.
We find it significant that, after returning to work for defendant in May 1978, plaintiff was apparently able for a period of some nine months to perform the strenuous work involved in his job as a waste baler to defendant's satisfaction. Plaintiff did not experience a recurrence of his former disabling pain until his job was changed to that of a baler which, although perhaps no more strenuous than his former work, undoubtedly involved considerable heavy lifting.
In its argument defendant emphasizes that plaintiff denied having suffered an "accident" after returning to work in May 1978. However, in his testimony plaintiff stated that he defined an "accident" as a single, traumatic event, as generally understood by the average layman who is not familiar with the liberal construction of this word under our Workmen's Compensation *908 jurisprudence. The facts giving rise to disability, and not the conclusion of the employee, determine whether an accident within the meaning of workmen's compensation law has occurred.
The unrefuted evidence is that, because of activities involved in the performance of his new duties, plaintiff's back began to hurt so intensely that he had to spend two days in bed. Further, for the first time since returning to his employment, plaintiff again visited Dr. Bailey for treatment.
Consequently, upon the basis of the record, we find that in January 1979, because of strenuous work connected with his employment, plaintiff suffered either an "accident" or a series of minor "accidents" which caused an aggravation of his previous back condition, producing disability. Therefore, he is entitled to workmen's compensation benefits.
Extent of Disability
The trial judge determined that plaintiff was partially disabled rather than permanently totally disabled. The record shows that this conclusion was not clearly erroneous. However, under La.R.S. 23:1221(3), for injuries occurring after September 1, 1977, benefits are payable for a maximum period of 450 weeks. Therefore, the judgment will be amended to change the maximum period for payment of benefits from 425 weeks to 450 weeks.
Penalties and Attorney Fees
We agree with the trial judge's determination that defendant's refusal to pay workmen's compensation benefits to plaintiff was not arbitrary or capricious. Therefore, plaintiff is not entitled to recover penalties and attorney fees.
Conclusion
For the reasons set forth, the second paragraph of the judgment of the trial court is amended and recast to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that S. J. Miller is partially permanently disabled and entitled to workmen's compensation benefits, and that accordingly there should be judgment herein in favor of S. J. Miller and against Olinkraft, Inc. for workmen's compensation benefits payable beginning February 2, 1979, on a weekly basis computed as follows: Sixty-six and two-thirds per centum (662/3%) of the difference between the wages S. J. Miller was earning as of February 2, 1979, and any lesser wages which S. J. Miller actually has earned in any week or does earn in any future week, in any gainful occupation for wages, whether or not the same or a similar occupation as that in which S. J. Miller was customarily engaged when injured and whether or not an occupation for which S. J. Miller at the time of the injury was particularly fitted by reason of education, training and experience during the period of disability, but not more than a maximum of Ninety-five Dollars ($95.00) per week, together with seven percent (7%) per annum judicial interest on each past due installment from its due date until paid, and not beyond a maximum of four hundred fifty (450) weeks, provided that for any week during which S. J. Miller is paid any compensation Olinkraft, Inc. shall be entitled to a reduction of one full week of compensation against the maximum number of weeks for which compensation is payable under this judgment and for any week during which S. J. Miller is paid no compensation because of S. J. Miller's actual earnings during that week, Olinkraft, Inc. shall not be entitled to a reduction for that week against the maximum number of weeks for which compensation is payable under this judgment and in no event shall the total number of weeks of compensation payable under this judgment be increased beyond four hundred fifty (450) weeks.
As amended, the judgment is affirmed at appellant's cost.
Before PRICE, HALL, MARVIN, JASPER E. JONES and FRED W. JONES, Jr., JJ.

*909 ON REHEARING
PER CURIAM.
We granted a rehearing in this case solely to correct an error, called to our attention by plaintiff-applicant, in that portion of our opinion and judgment which stipulated that plaintiff's maximum weekly workmen's compensation benefits were $95.00. This figure applied to injuries occurring on or after September 1, 1976 and on or before August 31, 1977. However, we determined in this case that the compensable injury occurred in January, 1979.
La.R.S. 23:1202(1) provides in pertinent part:
"... For injuries occurring on or after September 1, 1977, the maximum weekly compensation to be paid under this Chapter shall be sixty-six and two-thirds per centum of the average weekly wage paid in all employment subject to the Louisiana Employment Security Law and the minimum compensation shall be not less than twenty per centum of such wage, said maximum and minimum to be computed to the nearest multiple of one dollar....
"For the purposes of this Chapter the average weekly wage in all employment subject to the Louisiana Employment Security Law shall be determined by the administrator of the division of employment security on or before August 1 each year as of the quarter ending on the immediately preceding March 31 of each year. The average weekly wage so determined shall be applicable for the full period during which compensation is payable when the date of occurrence of injury falls within the twelve month period commencing September 1 following the determination."
The average weekly wage for employment subject to the Louisiana Employment Security Law in January 1979, as determined by the administrator of the Louisiana Division of Employment Security, was $210.88. Two-thirds of this figure, rounded to the nearest multiple of one dollar, is $141.00. Therefore, the maximum weekly workmen's compensation benefit due plaintiff is $141.00 rather than $95.00.
For these reasons, we amend our original opinion and judgment in this case to change from $95.00 to $141.00 the maximum weekly workmen's compensation benefits to which plaintiff is entitled. In all other respects the original opinion and judgment are reinstated.
NOTES
[1] As pointed out in Lester v. Rebel Crane & Service Co., et al, 393 So.2d 674 on the docket of the Supreme Court of Louisiana, rendered January 26, 1981, characterization of this two year period as peremptive is "an incorrect jurisprudential overlay on a statute with the title of `Prescription'."
[2] La.R.S. 23:1021(1) defines "accident" as "an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury."
[3] After plaintiff filed this workmen's compensation suit, Prudential Insurance Company instituted proceedings against him to recover $7,633.13 paid under its group accident and sickness policy. The two suits were consolidated for trial purposes. Subsequently, Prudential filed a motion for summary judgment which was sustained. Upon appeal we affirmed. See our docket No. 14,214, The Prudential Ins. Co. of America v. S. J. Miller, 388 So.2d 449 (La.App.1980).