513 So.2d 307 (1987)
Kenneth BANKSTON
v.
SCAFFOLDING RENTAL & ERECTION SERVICES, INC.
No. 86 CA 0584.
Court of Appeal of Louisiana, First Circuit.
August 21, 1987.
*308 Larry Starns, Ernest E. Hartenstine, Denham Springs, for plaintiff.
Leonard L. Kilgore III, Baton Rouge, for defendant.
Before COVINGTON, C.J., and EDWARDS, WATKINS, LANIER and LeBLANC, JJ.
EDWARDS, Judge.
This suit involves a worker's compensation claim filed by Kenneth W. Bankston against Scaffolding Rental & Erection Services, Inc., and Zurich-American Insurance Company. The trial court returned a judgment in favor of plaintiff, and both defendants appealed.

FACTS
On October 28, 1982, Kenneth Bankston seriously injured his back lifting scaffolding boards during the course and scope of his employment with Scaffolding Rental & Erection Services, Inc. Mr. Bankston told the men he worked with and his supervisor, Tommy Joe Graham, that he had hurt his back. He asked Mr. Graham not to fill out an accident report because plaintiff thought he had merely pulled a muscle. Plaintiff went to work the next day but did very little because his back still hurt. On November 5, he went to see a chiropractor, Dr. Eric L. Lensgraf, who adjusted his back and told him to rest. The next day plaintiff went to the Seventh Ward emergency room where he was given a pain shot. He did not improve so he was admitted to the hospital on November 7th.
After his discharge, plaintiff visited three different chiropractors seeking relief from the pain. He also went to see his family physician, Dr. Nathan D. Forrest, who referred him to a New Orleans neurosurgeon, Dr. Kenneth E. Vogel. A CAT scan revealed plaintiff had three bulging discs in the lumbar area. In January of 1983, Dr. Vogel performed a lumbar chymopapain diskectomy. Plaintiff underwent this procedure because Dr. Vogel told him he could go back to light duty work within three months and his regular job within six months if the surgery was successful. However, Mr. Bankston was unable to return to work because of the pain so he filed *309 a formal demand for worker's compensation with his employer in May of 1983.[1]
Scaffolding turned plaintiff's claim over to its insurer, Zurich, who began an investigation. Zurich discovered that Mr. Bankston had submitted his medical bills to his own health insurance carrier and had made at least ten written statements falsely representing that his injury was not job-related. Zurich also had difficulty in contacting plaintiff's co-employees since they were no longer employed by Scaffolding. Plaintiff did receive compensation benefits (for the weeks from October 28, 1982, to April 28, 1983) from Zurich based on the report of Dr. Vogel that Mr. Bankston had suffered a total, temporary injury. After Zurich refused to pay plaintiff any additional benefits, he filed suit against Scaffolding and Zurich. The trial court rendered a judgment against Scaffolding[2] finding that plaintiff's injury occurred during the course and scope of his employment, that plaintiff was totally and permanently disabled, and that defendants were liable for $5,000.00 in attorney's fees and twelve percent penalties due to their arbitrary and capricious conduct in failing to continue paying plaintiff worker's compensation benefits.

WORKER'S COMPENSATION
We find that Mr. Bankston carried his burden of proving by a preponderance of the evidence that his injury occurred during the course and scope of his employment.
Albert Newman Sullivan and Ruddles A. Bennett, Jr., were working alongside plaintiff at the time he was injured. At trial, Mr. Sullivan stated that they had been working for four to five hours when plaintiff "turned white and told me that he had hurt his back." He testified that he had to take the scaffolding boards plaintiff was carrying off of him and that plaintiff was unable to work afterwards.
Ruddles A. Bennett, Jr., also corroborated plaintiff's story. He testified that even though plaintiff was a foreman, he had pitched in to help since they were shorthanded. He stated that plaintiff had worked with them all morning carrying scaffolding boards when he suddenly stopped and said he had pulled his back. Since Mr. Bankston was unable to work anymore, he climbed down from the scaffolding and told his supervisor, Mr. Graham, that he had hurt his back. At trial, Mr. Graham corroborated plaintiff's testimony.
In addition, Dr. Lensgraf testified by deposition that he treated Mr. Bankston on November 5, 1982, for a back injury plaintiff had said he suffered on October 28, 1982. Dr. Lensgraf's statement supported and corroborated plaintiff's testimony as to the facts and circumstances surrounding his injury. Powell v. TAC Amusement Co., 424 So.2d 501, 503 (La.App. 5th Cir.1982).
The assessment of witness credibility is an important trial court function. Miller v. Olinkraft, Inc., 395 So.2d 902 (La.App. 2d Cir.1981). We cannot say that the trial judge was manifestly erroneous in his evaluation of the testimony in this case, nor did he err in concluding that plaintiff discharged his burden of proving he was injured during the course and scope of his employment on October 28, 1982.

PARTIAL DISABILITY
The trial court erred in finding that Mr. Bankston's injury resulted in a permanent and total disability under LSA-R.S. 23:1221(2). Since the accident occurred prior to the 1983 amendment, the statute in effect at the time of plaintiff's injury required that the employee be incapable of engaging "in any gainful occupation for wages." If the claimant can perform any gainful employment, even if it is not in his former field, he is partially disabled.
*310 Mr. Bankston's doctors all testified that he was capable of some kind of light-duty labor where he would not have to lift anything over twenty-five pounds or bend or stoop repeatedly. Plaintiff admitted that he mows his own lawn, albeit with a self-propelled mower, goes fishing for several hours at a time in a boat, and occasionally drives to Alabama to go deer hunting.
A worker is partially disabled under LSA-R.S. 23:1221(3) when he cannot perform the duties required by his former employment but can still do other work. Partial disability exists when an employee cannot perform the same work as before his injury because of substantial pain, but is mentally and physically capable of performing other available jobs. Reynolds v. Wal Mart Stores, Inc., 445 So.2d 490 (La.App. 2d Cir.1984).
The trial court relied on the "odd-lot" doctrine to find that plaintiff was permanently and totally disabled. An odd-lot claimant does not have to be absolutely helpless to qualify for total disability status. If the claimant can prove that his physical condition, his mental capacity, his education, training, age or other factors combined place him in a substantial disadvantage in a competitive labor market, he has made out a prima facie case for classification in the odd-lot category. The employer and insurer must then show that some form of suitable work is regularly and continuously available to the claimant in the area where he resides. Dusang v. Henry C. Beck Bldrs., Inc., 389 So.2d 367 (La.1980).
We find that plaintiff did not make a prima facie case of showing that he qualified for classification in the odd-lot category. He has a high school education and a work-life expectancy of at least twenty years. While we recognize that plaintiff's injury is painful and he may have to undergo surgery again in the future, he did not show that the type of light-duty labor described by his doctors would cause him substantial pain. Lanus v. Gulf Wandes Corp., 470 So.2d 492 (La.App. 1st Cir.1985).
Even though plaintiff failed to shift the burden of showing he should be classified under the odd-lot doctrine, the defendants produced Dr. George Hearn, a vocational rehabilitation expert, who testified that plaintiff is capable of engaging in regular, gainful employment which is readily available in the Baton Rouge area. Plaintiff lives in Holden, Louisiana, which is within thirty miles of Baton Rouge. Mr. Bankston has worked in Baton Rouge previously and is capable of driving that distance now. Dr. Hearn stated that plaintiff is qualified for a number of light-duty jobs for which there is a great demand, such as cashiers, clerks, small engine and appliance repairmen, and light truck delivery men.
The evidence in this case clearly establishes that plaintiff's injury was only partially disabling, limiting him to a maximum of four hundred and fifty weeks of payments, beginning April 29, 1983, in accordance with the formula set forth in LSA-R.S. 23:1221(3).

PENALTIES
Under LSA-R.S. 23:1201.2, an employer must pay worker's compensation benefits within sixty days of receipt of written notice. When an employer's failure to do so is found to be "arbitrary, capricious, or without probable cause," then the employer may be subject to penalties and attorney's fees. "Whether or not a termination of or refusal to pay benefits is arbitrary, capricious or without probable cause depends primarily on the facts known to the insurer at the time of its action," and since such question is ultimately one of fact, the trial court's finding should not be disturbed on appeal absent manifest error. Edwards v. Hartford Ins. Co., 445 So.2d 499, 502 (La.App. 2d Cir.1984).
This penalty provision is a harsh remedy and should not be imposed in doubtful cases where there is a bona fide dispute as to the causal connection between the accident and the disability. Crooks v. Belden Corp., 334 So.2d 725 (La.App. 3d Cir.1976). An employer is entitled to present a serious defense in good faith.
*311 Tucker v. Associated Grocers, Inc., 473 So.2d 328, 334 (La.App. 1st Cir.), cert. denied, 477 So.2d 716 (La.1985).
We note that our holding that plaintiff is entitled to compensation benefits does not automatically mean that defendants were arbitrary and capricious in denying his claim. Scaffolding was not formally notified of plaintiff's injury until seven months after it occurred. Scaffolding immediately turned the claim over to Zurich whose investigation disclosed serious discrepancies in the plaintiff's statement about when and where the accident occurred. In his deposition, Dr. Forrest stated that Mr. Bankston told him that the accident occurred while plaintiff was at home chopping firewood. Zurich also deposed Dr. Vogel who stated that plaintiff had indicated he was in good health until November 5, 1982. When attempting to obtain the plaintiff's medical bills, Zurich discovered they had been paid by his health insurance carrier. Further investigation revealed that plaintiff had sworn to his insurer that his injury occurred at home. The many admittedly false statements made by the plaintiff caused Zurich to deny his claim for worker's compensation. Therefore, it was error to assess attorney's fees and penalties against them.
After a thorough review of the record, we affirm the trial court's finding that plaintiff sustained a disabling back injury during the course and scope of his employment. We reverse the court's holding that plaintiff is totally and permanently disabled, instead finding that plaintiff was partially disabled as a result of the injury. We also reverse the part of the judgment awarding plaintiff twelve percent penalties and attorney's fees since the record does not support a finding that defendants were arbitrary and capricious in denying plaintiff's claim.
For the above reasons, we affirm in part and reverse in part. Costs to be borne equally by appellants and appellee.
AFFIRMED IN PART AND REVERSED IN PART.
WATKINS, J., dissents and assigns reasons.
WATKINS, Judge, dissenting.
The trial court found that Bankston was totally and permanently disabled as an odd-lot worker. The odd-lot doctrine is applicable to substantial pain cases. Martin v. H.B. Zachry Co., 424 So.2d 1002, 1005-06 (La.1982). The trial court implicitly found that, because of substantial lower back pain, and other factors, Bankston can perform no services other than those which are so limited in quality or dependability that a reasonably stable market for them does not exist, and that work is an overburdening task for him. Id.
Physical suffering is particularly difficult, if not impossible, to measure objectively, and the trial court is in the best position to assess the validity of a plaintiff's complaints and the extent of his pain. The evidence in the record furnishes a reasonable factual basis for the trial court's findings.
Bankston seriously injured his back in October 1982 at work. His treating neurosurgeon testified that Bankston had a ruptured lumbar disc and three bulging lumbar discs which required an injection of chymopapain in January 1983, and an (unsuccessful) operation in February 1984. Bankston consistently complained to the doctor of lower back pain during office visits in April (intermittent low back pain), June (lower back pain for two weeks), August (burning low back pain), and November of 1984 (back pain extended up into the head and neck; he still had some degree of pain 24 hours each day); and in February (low back pain had worsened and he had suffered two muscle spasm attacks), and August of 1985 (back pain with activity). The trial was held on August 28, 1985. The doctor stated that Bankston's continued back pain was probably due to scarring at the nerve root which resulted in abnormal vertebral movement, which in turn stretched the nerve root. In the doctor's opinion, Bankston could not conduct any activity that would put a strain on his back, could not do repeated bending or lifting, and could not lift in excess of 25 pounds.
*312 Bankston himself testified at trial that he still had pain in his foot, leg and back from his work injury and had a "burning" sensation in his back. If he got out and "piddle(d) around" too much, his back hurt him so much that he had to "lay around" for a day or two. Bankston's activities included walking in his yard behind a self-propelled lawn mover; he had also gone fishing, though not in rough water. Bankston stated that he had driven his pickup truck at times but that his back hurt when riding in a car. He admitted to "hunting" deer from a blind and to helping clean a deer. Such minor activities certainly do not preclude a finding that Bankston is a substantial pain worker. See Whitaker v. Church's Fried Chicken, Inc., 387 So.2d 1093 (La.1980) (plaintiff who continued to do janitorial work was nevertheless found to be disabled by substantial pain). In addition, Bankston testified that he was unable to stay in a bent-over position and could not handle a desk job because of his back pain. He also stated that he could not twist his body without pain. Defendant's vocational rehabilitation expert testified that Bankston was qualified for a number of light duty jobs, but it was for the court to decide whether he could perform such work without incurring substantial pain.
On appellate review, the trial court's factual findings in workers' compensation cases are entitled to great weight. They should not be disturbed where there is evidence in the record which furnishes a reasonable factual basis for the findings, unless clearly wrong. They should not be disturbed merely because the reviewing court believes that other evaluations and inferences are as reasonable. This limited standard of review is based on the trial court's better capacity to evaluate live witnesses (compared to our access only to a cold record) and also upon the different functions of the trial and appellate courts. See Crump v. Hartford Accident & Indemn. Co., 367 So.2d 300, 301-02 (La.1979); Cadiere v. West Gibson Prods. Co., 364 So.2d 998, 999 (La.1978); Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978). Although I might have assessed the extent of Bankston's pain differently than the trial court did, I do not believe its decision was clearly wrong.
NOTES
[1] Plaintiff eventually had two discs surgically removed by Dr. John S. Jackson. He has not been to work since November 4, 1982.
[2] We note that a clerical error caused only Scaffolding to be named as a defendant in the trial court's judgment. Both Scaffolding and Zurich filed this appeal.