665 So.2d 740 (1995)
Sandra HENRY
v.
SCHWEGMANN GIANT SUPERMARKETS, INC.
No. 95-CA-327.
Court of Appeal of Louisiana, Fifth Circuit.
December 13, 1995.
Rehearing Denied January 17, 1996.
Writ Denied March 29, 1996.
*741 Christopher M. Landry, Metairie, for Appellant/Defendant Schwegmann Giant Supermarkets, Inc.
Nicolas Estiverne, Nicolas Estiverne & Associates, New Orleans, for Appellee/Plaintiff Sandra Henry.
Before KLIEBERT, GOTHARD and CANNELLA, JJ.
CANNELLA, Judge.
Defendant, Schwegmann Giant Supermarkets, Inc. (Schwegmann), appeals from a workers compensation judgment in favor of plaintiff, Sandra Henry. We affirm that Henry is entitled to supplemental earnings benefits (SEBs). We amend to reduce the amount of penalties and attorneys fees owed by Schwegmann and affirm as amended. We reverse as to penalties and attorney's fees for failure to pay for Henry's shoes. We amend to provide that Schwegmann is liable for travel expenses related to Henry's medical necessities and rehabilitation.
Henry was injured on July 24, 1990 when a meat rack fell on her, causing injuries to her right arm, chest, back, hip and ankle. The parties stipulated at trial that Henry was injured while in the course and scope of her employment with Schwegmann and that she was earning $4.85 per hour and her weekly wage was $180.67. There was no dispute of her medical condition. She has a chronic ankle problem requiring the use of elastic stockings, orthopedic shoes and a special ankle brace. She also continues to suffer some discomfort with her right rib and shoulder. There was no medical testimony and Henry's medical reports were introduced without objection. She was paid compensation from the date of the accident until May 1993. Then, Schwegmann terminated Henry's workers compensation benefits because she was offered a position at one of their stores at the same salary and she declined. As a result, Henry filed a claim for SEBs and penalties and attorney fees for the arbitrary and capricious failure to pay benefits.
The hearing on the matter was held on March 28 and 29, 1994. The hearing officer rendered a judgment in favor of Henry on July 21, 1994. She determined that Henry is entitled to disability from the date of the injury until June 1, 1993 and that she is entitled to SEBs beginning June 2, 1993 and continuing for the duration of her medically documented disability period. The judgment further ordered Schwegmann to pay all outstanding medical bills, medication expenses, transportation expenses, shoes and brace, as prescribed by Dr. Davis. The hearing officer found that the job offered to Henry was not reasonably accessible in her geographical region and not realistically obtainable with her restrictions, until she is provided with the necessary orthopedic prescriptions. In addition, the judgment ordered Schwegmann to pay penalties of $2000 and attorney fees of $3000 for its arbitrary and capricious refusal to pay SEBs and for its failure to timely authorize the payment for the prescription shoes.
On appeal, Schwegmann asserts that the hearing officer erred in awarding SEBs and in awarding penalties and attorney fees.
SUPPLEMENTAL EARNINGS BENEFITS
La.R.S. 23:1221(3) defines SEBs as follows:
(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed *742 as four and three-tenths times the wages as defined in R.S. 23:1021(10).
(b) For purposes of Subparagraph (3)(a), of this Paragraph, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including, but not limited to, earnings from odd-lot employment, sheltered employment, and employment while working in any pain.
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region.
(ii) For purposes of Subparagraph (i) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment.
In Smith v. Louisiana Dept. of Corrections, 633 So.2d 129, 132 (La.1994), the Louisiana Supreme Court interpreted the statute as follows:
Entitlement to supplemental earnings benefits is governed by LSA-R.S. 23:1221(3). In order to recover, the employee must first prove by a preponderance of the evidence that he is unable to earn wages equal to ninety percent or more of the wages he earned before the accident ... The analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that worker's compensation law is to be liberally construed in favor of coverage ... `In determining if an injured employee has made out a prima facie case of entitlement to supplemental earnings benefits, the trial court may and should take into account all those factors which might bear on an employee's ability to earn a wage.'... Once the employee's burden is met, the burden of proof then shifts to the employer, who, if he wishes to contend that the employee is earning less than he is able to earn so as to defeat or reduce supplemental earnings benefits, bears the burden of proving that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region.
See also: Jackson v. A.I.A., 94-371 (La.App. 5 Cir. 11/16/94), 646 So.2d 1088, 1091; Johnson v. Chateau Living Center, 94-989 (La. App. 5 Cir. 4/25/95), 653 So.2d 1367.
In this case, the facts show that Henry underwent surgery on her ankle to repair torn ligaments in November 1991. Following the surgery, she was ordered to wear an ankle brace, elastic stockings and prescription shoes. She continued to suffer swelling and pain in her ankle and some residual discomfort in her shoulder and rib. In June 1992, Henry underwent a second surgery for tarsal tunnel syndrome, to release a pinched nerve in the ankle. The procedure was partially successful, but she continues to suffer swelling and pain in the ankle, as well as in her injured rib and shoulder.
In March 1993, Schwegmann hired Todd Capielano, a licensed vocational rehabilitation counselor, to evaluate the employability of Henry and to assist her in finding suitable employment. He met with Henry in her attorney's office on March 22, 1993. Prior to the meeting, Capielano reviewed her medical records. During the meeting, she provided Capielano with her educational background and work history. Her counsel refused to allow Henry to answer questions related to *743 her perception of her working ability. On April 1, 1993, Capielano met with Dr. Gerald Davis, Henry's treating physician, who informed him that she was limited to sedentary work, with no long periods of standing and/or walking. Dr. Davis also said that she should avoid repetitive bending or "hunkering", refrain from climbing or jumping and should not lift more than five to ten pounds. He also stated that Henry should avoid pushing or pulling, because her rib condition continues to be troublesome. Capielano testified that Dr. Davis limited Henry to four hours per day when she returned to work and stated that her work time should be gradually increased to six and then eight hours per day. In June 1993, Dr. Davis released her to return to light duty work, with the stated restrictions.
On April 6, 1993, Capielano contacted the manager of the store on Airline Highway in Metairie, where Henry was working when she was injured. He was informed that the only available job was the position of vault clerk, which is an office cashier job. Although the manager met with Henry about this position on April 8, 1993, the position was not offered to her. Miriam Riverez, a vault clerk worker, testified that the job requires both sitting and standing, but that the workers stand most of the time. Capielano testified that he remained in contact with the personnel department. He stated that Schwegmann employees were actively searching for a position for Henry. He also said that it is his policy to try to get the injured employee back to work with the same employer, whenever possible, so he did not search for a position for her outside of Schwegmann. In May 1993, the manager of the store in Gentilly told Capielano that he had a job available in the audit department. That job required the use of a calculator. Capielano said that he performed a job analysis of this job and found that it met all of Henry's physical requirements, as she would be sitting down 90% of the time. However, when he attempted to set up an interview for the job through Henry's counsel, it was turned down because Henry felt that it was too far from her home in Metairie. Henry explained in her testimony that she cannot drive a car and a taxi is too expensive (costing $30 for a one way trip to work), so she would have to use public transportation. To get to the Gentilly store, she would have to take three buses, transfer twice, wait at least twenty minutes between buses and walk several blocks from the bus stop to the store. She noted that the Airline Highway store is only six blocks from her home.
Capielano stated that Henry would have to take two buses, not three, to get to Gentilly. Capielano also testified that he did a market search the Friday before trial and found numerous positions that she could fill, such as cashier, telemarketer, dispatcher, collector or alarm dispatcher. He did not personally contact anyone in relation to these positions to find out if any were available to Henry or where specifically those jobs were located.
Schwegmann argues that it does not have to offer or find Henry a position near her home. It contends that it satisfied its burden under the statute when it offered her a job in Gentilly, which is in her geographical area. We agree that the statute requires that Schwegmann prove that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in her or the employer's community or reasonable geographic region. However, as part of that determination, the court must also consider whether Henry is physically able to transport herself to that job, because that ability is necessarily a part of whether or not she can physically perform the work. See: La.R.S. 23:1221(3)(c)(i). In addition, under La.R.S. 23:1221(3)(c)(ii), if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform the employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment.
In this case, the medical evidence shows that Henry suffers swelling and pain in her ankle when she walks or stands for long periods. The evidence also shows that Henry has always worked and wants to continue to work, but is burdened by severe restrictions *744 to her mobility. However, in order to get to the store in Gentilly, she would have to catch at least two buses and wait for at least twenty minutes between buses. She will have to walk from her home to the bus and from the bus to the store. She stated that she refused the job because she could not physically tolerate those conditions. There is some indication in the record that special shoes and a new brace will help her pain. However, the first brace prescribed by Dr. Davis became too tight and she needs a new one. In this respect, Henry contends that she called the orthopedic supplier three times and has not received any response. She contends that Schwegmann refuses to pay for the brace. She likewise stated that she has not been able to afford the special shoes and that Schwegmann refuses to pay for them. After our review of the evidence, we find that, presently, her physical disability prevents her from traveling the distance to the Schwegmann store in Gentilly and, thus, Schwegmann failed in its burden of proof. Under these circumstances, we find that the hearing officer did not err in determining that Henry is entitled to SEBs.

PENALTIES AND ATTORNEY FEES
Schwegmann next argues that the hearing officer erred in awarding Henry penalties and attorney fees for arbitrary and capricious refusal to pay for her special orthopedic shoes and for failing to provide SEBs.
The evidence shows that all doctors involved in this case regularly sent updates on Henry's condition to the Schwegmann claims department. These notes reflect that she continued to suffer pain in her rib, shoulder and ankle. The notes show that the physicians wanted her to wear the shoes, the elastic stockings and the brace. Dr. Davis expresses his discontent, several times in his reports, that Henry did not get the new brace. He even expresses that he wished someone would fix the brace. Henry testified that she tried to get the new brace and shoes, but was unsuccessful in getting the orthopedic supplier to respond to her inquiries. She contends that the requests were turned down by Schwegmann. She was unable to purchase the objects because of the expense (the brace cost $600 and the shoes cost $200).
The Schwegmann claims manager, Andre Roques, testified that he did not receive any requests for those items. He only knew about the request for the first brace, which was paid for by Schwegmann. He also testified that all outstanding bills were paid. However, on appeal, Schwegmann acknowledges its duty to pay any outstanding bills and the bills for the brace and shoes. It states that it will do so upon submission of a request for these items.
The hearing officer listened to the testimony and concluded that Schwegmann was arbitrary and capricious in failing to pay for Henry's shoes. However, the evidence does not show that Schwegmann was notified of the claim. Roques testified that his office did not have any written requests for the item. Under La.R.S. 23:1201.2, governing penalties and attorney fees, the employer must pay a written claim within sixty days after receipt of written notice. It is true that the doctor's notes reflected his dissatisfaction that Henry had not received her second brace. However, there is no evidence by Henry, either by testimony or exhibits, that written notice of the claim was sent to or received by Schwegmann. Therefore, we find that the hearing officer erred in awarding attorney fees and penalties for failure to pay for the orthopedic shoes and will reverse this finding. (We note that the judgment does not refer to the brace or stockings.)
In regard to whether Schwegmann was arbitrary and capricious in terminating Henry's benefits, we agree with the hearing officer. Although Dr. Davis released Henry to return to work, he released her with restrictions. The reports of the physicians never varied in their opinions that Henry continued to suffer pain. A review of those reports shows that she cannot walk or stand for any length of time. Yet the position they offered her required that she stand while waiting for her buses, as well as walking to and from work and to and from her home. She did not refuse the job because the distance was too far, she refused the job because transportation to the job would be painful. Under these circumstances, we find *745 that the hearing officer did not err in finding Schwegmann arbitrary and capricious in terminating her benefits.
The trial judge awarded Henry $2000 in penalties and $3000 in attorney's fees for the arbitrary and capricious conduct of Schwegmann relative to the orthopedic shoes and the termination of benefits. Because we reverse the arbitrary and capricious finding relative to the orthopedic items, we must reduce the penalties and attorney fees award. Based on our review of the record, we find that Henry is entitled to $1,000 for penalties and $1,500 for attorney fees for Schwegmann's arbitrary and capricious conduct in terminating her benefits.
Finally, Schwegmann disputes the hearing officer's order for it to pay Henry's travel expenses to any location other than to her physicians. At trial, the evidence showed that Schwegmann refused to pay for travel expenses to the office of her attorney for her interview with the vocational rehabilitation counselor. It argues that it should not pay for those travel expenses. However, this was an expense related to her rehabilitation, regardless of the location of the meeting. Thus, we find that the hearing officer did not err in awarding Henry those travel expenses. We note that the judgment does not limit the expenses to those involving her medical necessities and we will amend the judgment to limit the travel expenses to her medical condition and rehabilitation.
Accordingly, the judgment of the hearing officer is hereby affirmed as to Henry's award of SEBs. It is reversed as to the award of penalties and attorney's fees for failure to pay for orthopedic shoes. It is affirmed as to the award for penalties and attorney's fees for failure to pay SEBs. The award of penalties and attorney's fees are amended to $1,000 for penalties and $1500 for attorney fees. The judgment is further amended to state that Schwegmann is to pay travel expenses related to Henry's medical necessities and rehabilitation. The judgment is otherwise affirmed and costs of appeal are assessed against appellee.
AFFIRMED IN PART, REVERSED IN PART, AMENDED IN PART AND AFFIRMED AS AMENDED.