674 So.2d 947 (1996)
Edward L. DAUGHERTY
v.
DOMINO'S PIZZA and Zurich-American Insurance Company.
No. 95-C-1394.
Supreme Court of Louisiana.
May 21, 1996.
*948 Kenneth Ray Williams, Baton Rouge, for Applicant.
Robert Michael Caldwell, Baton Rouge, Moore, Walters & Shoenfelt, for Respondent.
KIMBALL, Justice.[*]

ISSUE
We granted writs in this worker's compensation case to determine whether an employer's offer of a light-duty job at a location which the claimant is unable to reach due to physical restrictions existing as a result of his work related injury satisfies the employer's burden under La.R.S. 23:1221(3)(c)(i) and allows for a reduction in the claimant's supplemental earnings benefits. Because the evidence in this case indicates the claimant's work related injury resulted in his physical inability to drive more than a short distance from his home, we hold that the offering of a light-duty job 30 miles from his home does not satisfy the employer's burden of showing available employment in the employee's community or reasonable geographic region.

FACTS AND PROCEDURAL HISTORY
On November 21, 1988, Edward L. Daugherty, a Domino's employee who drove tractor-trailer trucks delivering supplies to Domino's stores, injured his lower back lifting a pallet of heavy boxes while making a delivery. Subsequently, Dr. Anthony Ioppolo, a neurosurgeon, diagnosed a lumbar disc rupture at L4 and, on December 5, 1988, performed surgery on Mr. Daugherty wherein he repaired ruptures at L4 and L5 and performed disc excisions and foraminotomies on both the L4 and L5 discs. Based upon Mr. Daugherty's average pre-accident weekly wage, Domino's paid Mr. Daugherty $267.00 per week in temporary total disability benefits, the maximum rate, from late November, 1988, through June 12, 1989.
On June 12, 1989, following post-operative recovery and improvement in his condition, Dr. Ioppolo released Mr. Daugherty to return to light-duty work with a restriction on any heavy lifting. Domino's offered claimant a light-duty desk job at the same Baton Rouge facility in which he had previously worked, and claimant accepted the position and began working there for $7.65 per *949 hour. However, Mr. Daugherty, who lived in Baker, Louisiana, testified that he soon began to have spasms in his left leg while driving the thirty mile distance from his home to the Domino's facility in Baton Rouge. Mr. Daugherty therefore would work at the facility for several hours a day for two or three days in a row (occasionally four or five days in a row), and then have to take a day or two off due to the spasms induced by the lengthy drive. Based on Mr. Daugherty's pay rate of $7.65 per hour for an average of 3.25 hours per day, five days per week, Domino's discontinued Mr. Daugherty's temporary total disability benefits on June 12, 1989, and began paying him $200.67 per week in supplemental earnings benefits.
During the months of June, July, and August, 1989, Mr. Daugherty worked intermittently, as described above, at the Domino's facility in Baton Rouge. Mr. Daugherty testified that despite suffering occasional spasms in his left leg, he was able to perform the light-duty work assigned to him at the facility. However, both Mr. Daugherty's testimony and the deposition testimony of Dr. Iopollo show that during this period Mr. Daugherty suffered from spasms in his left leg while driving between his home in Baker and the Domino's facility in Baton Rouge which, in Mr. Daugherty's opinion, made his driving dangerous as he was unable to fully control his vehicle during the spasms. During this same period, Dr. Ioppolo examined Mr. Daugherty several times, finding a grade one spondylolisthesis at L5-S1, which had existed prior to Mr. Daugherty's surgery, and post-operative changes with mild fibrosis. Due to Mr. Daugherty's complaints of back pain and leg spasms, Dr. Ioppolo prescribed pain medication and a corset.
On August 3, 1989, Alexis Risk Management, Domino's adjustor, referred Mr. Daugherty to Dr. Dulligan for a current status evaluation. Dr. Dulligan's report notes continued post-operative back and leg pain with left leg spasms and comments on Mr. Daugherty's noticeable difficulty in sitting and bending. Dr. Dulligan's report also notes that his review of Mr. Daugherty's post-operative MRI scan shows a protrusion of the L5-S1, L4-5, and L3-4 discs. Dr. Dulligan also noted that various tests revealed weakness in Mr. Daugherty's left leg. Finally, Dr. Dulligan opined in his report that Mr. Daugherty was still suffering from nerve root irritation and, at least at that time, was certainly not a candidate for returning to work as a truck driver.
On August 28, 1989, after Mr. Daugherty returned to see Dr. Ioppolo and related to him that he was having back and left leg pain and was unable to continue working at the Domino's facility due to the spasms in his left leg which made his driving hazardous, Dr. Ioppolo again listed Mr. Daugherty as "disabled" and prescribed physical therapy. Despite the fact that Dr. Ioppolo had listed Mr. Daugherty as "disabled" and had prescribed physical therapy, Domino's continued to pay Mr. Daugherty's supplemental earnings benefits at the reduced $200.67 per week rate.
Mr. Daugherty attended physical therapy at a clinic near his home in Baker for approximately one month, then returned to Dr. Ioppolo on October 3, 1989, reporting no discernable differences in his condition. At this point, Dr. Ioppolo decided to do a myelogram and a CT scan of Mr. Daugherty's lower back. These tests showed the previously noted slippage between discs L5-S1, poor filling of the L5 left nerve root, epidural scarring, and no recurrent disc ruptures. Dr. Ioppolo placed Mr. Daugherty on a TENS unit and prescribed a non-steroidal anti-inflammatory medication. After Mr. Daugherty reported at a subsequent visit that he had obtained some relief through use of the TENS unit, Dr. Ioppolo recommended to Mr. Daugherty that he undergo a functional capacities assessment and a work-hardening program. Dr. Ioppolo also placed Mr. Daugherty on a muscle relaxant at this time.
On November 24, 1989, Mr. Daugherty underwent a functional capacities assessment at the Occupational Performance Center ("Center") in Baton Rouge. This assessment resulted in a recommendation that Mr. Daugherty undergo a weight loss program as well as a work hardening program designed to recondition muscles to ameliorate the pain in his lower back. The assessment also determined that Mr. Daugherty's functional *950 abilities did not correlate with the requirements of his former job, i.e., that due to his physical condition, he would not be able to return to his job at Domino's Pizza as a delivery truck driver.
Mr. Daugherty began the work hardening program at the Center in Baton Rouge, but was unable to complete the program for the same reason that he had been unable to continue working at the light-duty position at the Domino's Pizza facility in Baton Rouge he continued to suffer from spasms in his left leg during the thirty mile drive from his home in Baker to the Center in Baton Rouge. In this regard, the evidence adduced at the compensation hearing shows that after complaining to Center personnel about the spasms in his leg and his concern as to his resultant driving ability, the Center placed his program on "hold" and referred him back to Dr. Ioppolo. When Mr. Daugherty went to see Dr. Ioppolo on December 12, 1989, Dr. Ioppolo discussed the matter with a therapist at the Center, instructed Mr. Daugherty to stop attending the program, and referred him to an anesthesiologist for a trial of epidural steroid injections. Mr. Daugherty then received two injections of the steroids, but after seeing Dr. Ioppolo again on January 29, 1990, and reporting to him that the pain had increased after each injection, Dr. Ioppolo discontinued the treatment, took Mr. Daugherty off of his narcotic pain relievers, and prescribed Motrin and Elavil, an anti-depressant.
On March 26, 1990, Mr. Daugherty returned to Dr. Ioppolo still complaining of spasms in his leg. Dr. Ioppolo then suggested to Mr. Daugherty that he try biofeedback therapy or pain stress management, and referred him to Dr. Bolter. After an initial evaluation, Mr. Daugherty received nine biofeedback treatments. However, following the biofeedback treatments Mr. Daugherty returned to Dr. Ioppolo on June 25, 1990, still complaining about pain and spasms in his leg. At this point, Dr. Ioppolo apparently informed Mr. Daugherty that he had run out of treatment options and that he would simply have to learn to live with the pain and spasms.
On May 4, 1990, Mr. Daugherty filed a disputed claim for compensation with the Office of Worker's Compensation against Domino's Pizza and Zurich American Insurance Company,[1] claiming entitlement to, inter alia, full compensation at the $267.00 per week rate, retroactive to August 28, 1989, when Dr. Ioppolo had listed Mr. Daugherty as disabled,[2] and penalties and attorney's fees for its failure to timely make a compensation payment, failure to forward medical reports within 30 days, failure to reinstate compensation benefits at the full rate retroactive to August of 1989, and failure to pay medical expenses despite more than 60 days notice. After hearing the matter, the hearing officer issued judgment on October 29, 1992, rejecting Mr. Daugherty's contention that he is either permanently or temporarily totally disabled. However, the hearing officer determined that Mr. Daugherty had carried his burden under La.R.S. 23:1221(3) of proving by a preponderance of the evidence that an injury sustained in the course and scope of his employment resulted in his inability to earn wages equal to 90% or more of the wages he earned before the accident, such that he had established a prima facie case of entitlement to an award of supplemental earnings benefits. The hearing officer further determined that Domino's had carried its burden of proving "the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region," Smith v. Louisiana *951 Dept. of Corrections, 93-1305 (La. 2/28/94), 633 So.2d 129, 132, by proving it had offered, and Mr. Daugherty had accepted and worked at, a light-duty job at the Domino's facility in Baton Rouge, the same place plaintiff had worked prior to sustaining his injury. As such, the hearing officer ruled Domino's had properly converted Mr. Daugherty's compensation from temporary total disability to supplemental earnings benefits and reduced his supplemental earnings benefits by the amount he was able to earn at the light-duty job. However, the hearing officer failed to set the appropriate rate for Mr. Daugherty's supplemental earnings benefits, stating that if the parties could not agree on the rate the matter could be decided later by the hearing officer. The judgment further held that as Mr. Daugherty had been doing part time work, Domino's was not arbitrary or capricious in reducing his benefits and therefore was not subject to an award of penalties and attorney's fees. However, the hearing officer's judgment was silent as to Mr. Daugherty's claims for penalties and attorney's fees for Domino's alleged failure to timely forward medical reports, failure to timely make one compensation payment, and failure to timely pay medical bills.
Mr. Daugherty timely appealed the decision of the hearing officer to the first circuit court of appeal, assigning as error the hearing officer's failure to find him permanently and totally disabled or temporarily and totally disabled due to his inability to drive to and from work. Alternatively, Mr. Daugherty claimed that if the hearing officer did not err in finding him eligible only for supplemental earnings benefits, the hearing officer nevertheless erred in failing to award him those benefits at the maximum rate of $267.00 per week, retroactive to August 29, 1989,[3] as Domino's had failed to carry its burden of proving the amount he was capable of earning. Mr. Daugherty contended, inter alia, that as he was unable to work at the light-duty job created for him since Domino's facility was thirty miles from his home and his injury prevented him from driving or riding in a vehicle for that distance, the hearing officer had erred in reducing his award of supplemental earnings benefits. Additionally, Mr. Daugherty assigned as error the hearing officer's failure to award him penalties and attorney's fees. The court of appeal, in an opinion not designated for publication, affirmed. Daugherty v. Domino's Pizza and Zurich-American Ins. Co., 94-CA-0307 (La. App. 1st Cir. 3/03/95). On application by Mr. Daugherty, this court granted writs to determine the correctness of that decision. Daugherty v. Domino's Pizza and Zurich-American Ins. Co., 95-1394 (La. 9/22/95), 660 So.2d 462.

DISCUSSION

Temporary or Total Disability
As a preliminary matter, Mr. Daugherty assigns as error in this court the hearing officer's failure to find him either temporarily or permanently totally disabled. At the time of Mr. Daugherty's accident, the Worker's Compensation Act required a claimant in a worker's compensation proceeding seeking temporary or permanent total disability benefits to prove he is unable "to engage in any self-employment or gainful occupation for wages."[4] La.R.S. 23:1221(1) and (2) (1988) (emphasis added). Further, under these statutes as they existed in 1988, a claimant was required to prove "to a legal certainty and by a reasonable preponderance of the evidence the nature and extent of his disability" to show that he was unable to engage in any employment. See, e.g., Jaeckle v. Dresser Industries, Inc., 457 So.2d 646, 648 (La.1984).
In the instant case, it is undisputed that Mr. Daugherty worked for Domino's in a *952 light-duty desk job during the months of June, July, and August of 1989. Mr. Daugherty unequivocally testified at the compensation hearing that he had no problem performing this job. While Mr. Daugherty contends he was unable to continue his employment at Domino's due to his injury, his testimony clearly shows that he was unable to continue working in that job because of the distance he had to drive to and from the job site, not because the job itself caused him problems. In this regard, Mr. Daugherty testified he can normally drive for a period of approximately fifteen minutes without problem. Given that La.R.S. 23:1221(1) and (2) (1988) each required the employee to prove he is unable to engage in any employment, and the record in this case contains no evidence that Mr. Daugherty would be unable to work in a similar light-duty job or some other type of light-duty job closer to his home in Baker, there was no error in the hearing officer's determination that Mr. Daugherty is not permanently or totally disabled.

Supplemental Earnings Benefits
Under the particular facts of this case, however, Mr. Daugherty's alternative argument that the hearing officer erred in finding Domino's had carried its burden of proving he is able to earn some wages by offering him a light-duty desk job which he is admittedly capable of performing, such that his supplemental earnings benefits should be reduced, is well taken. Entitlement to supplemental earnings benefits is governed by La.R.S. 23:1221(3).[5] In order to recover, the employee must first prove by a preponderance of the evidence he is unable to earn wages equal to ninety percent or more of the wages he earned before the accident. La. R.S. 23:1221(3)(a). Once the employee's burden is met, the burden of proof then shifts to the employer, who, if he wishes to contend the employee is earning less than he is able to earn so as to defeat or reduce supplemental earnings benefits, bears the burden of proving that the employee is physically able to perform a certain job, that the job was offered to the employee or that the job was available to the employee, and that the job offered or available is in the employee's or the employer's community or reasonable geographic region. La.R.S. 23:1221(3)(c)(i); Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1008-09 (La.1989). The amount of supplemental earnings benefits is then based on the difference between the average weekly wage earned by the employee prior to the accident and the plaintiff's earning capacity after the injury, La.R.S. 23:1221(3)(a)-(c), supra at n. 5; Freeman, 93-1530, 630 So.2d at 739, subject to the maximum amount specified *953 in La.R.S. 23:1202. Daigle, 545 So.2d at 1010 (On Rehearing).
In the instant case, the hearing officer found that Mr. Daugherty had carried his burden of proving a prima facie case of entitlement to supplemental earnings benefits. Domino's did not contest that determination in the court of appeal and does not now contest that determination in this court. Furthermore, our review of the record reveals no error in the hearing officer's decision that Mr. Daugherty had proved a prima facie case of entitlement to supplemental earnings benefits. The question which remains, however, is the issue raised by Mr. Daugherty's application in this court as to whether Domino's then carried its burden of proving that his supplemental earnings benefits should be reduced. On appellate review, the hearing officer's resolution of this issue is governed by the manifest error or clearly wrong standard of review. Freeman, 93-1530, 630 So.2d at 737.
It is well established that the worker's compensation act is remedial in nature, and that provisions of the worker's compensation law should be liberally construed in favor of the claimant. See Pinkins v. Cardinal Wholesale Supply, 619 So.2d 52, 55 (La.1993), and cases cited therein. As part of the determination of whether an employer has carried its burden under La.R.S. 23:1221(3)(c)(i) of proving work is available to the claimant, courts must consider all factors that affect the claimant's ability to engage in the offered or available employment, including whether the claimant is able to physically transport himself to that job. Claimant's ability to get to the job site, or lack thereof, is necessarily a part of the determination of whether the employee can physically perform the work. See Henry v. Schwegmann Giant Supermarkets, Inc., 95-327 (La.App. 5th Cir. 12/13/95), 665 So.2d 740, 743, writ denied, 96-0410 (La. 3/28/96), 670 So.2d 1235. As we have previously stated, a claimant does not have to accept employment that involves an appreciable and significant risk to his well being. Smith v. Louisiana Dept. of Corrections, 93-1305 (La. 2/28/94), 633 So.2d 129, 133.
This principle has heretofore been articulated by several courts of appeal in this state. For instance, in Henry, supra, an injured Schwegmann's Supermarkets employee who had proven a prima facie case of entitlement to supplemental earnings benefits was offered a position by Schwegmann's at one of its stores in an area of the New Orleans metro region different from the store and area in which she had previously been working. While the location of the store where she had previously been working was only six blocks from her home, the location of the store in which Schwegmann's offered her a position was in another area of New Orleans, one that would require the claimant, who suffered swelling and pain in her injured ankle when she was forced to walk or stand for long periods of time, to walk from her home to the bus stop, catch at least two buses, and wait at least twenty minutes between buses to get to that location. The court of appeal found that as the claimant's physical condition prevented her from traveling to the location of the store where the job was offered, and Schwegmann's had offered no other evidence of jobs available to the claimant, Schwegmann's had failed to carry its burden of proof.
In Maxie v. Brown Industries, Inc., 95-19 (La.App. 3rd Cir. 5/31/95), 657 So.2d 443, writ denied, 95-1630 (La. 10/06/95), 661 So.2d 469, the employer, despite the employee's advising the employer's rehabilitation firm that he did not have a driver's license and could not travel far for employment, offered the employee a list of jobs which were arguably within his physical capabilities, but remote from the claimant's rural community. In determining the employer had failed to carry its burden of proof under La.R.S. 23:1221(3)(c)(i), the court of appeal stated:
When considering the totality of factors facing Mr. Maxie's access to employment, several important issues were ignored.
* * * * * *
Additionally, the record fails to disclose that these jobs were proven available to Mr. Maxie either in his community, in his employer's community, or in the reasonable geographic region. For Mr. Maxie, an inhabitant of rural Louisiana, without a *954 car or driver's license, jobs located approximately one hour from his home are not within his reasonable geographic region.
* * * * * *
Whether a job is available in a reasonable geographic region may depend on such factors as the nature of the region, whether in a city or rural area, whether the claimant drives or has a license, and the availability of public transportation.
Maxie, 657 So.2d at 447.
In Henton v. Walker & Wells Contractors Inc., 25821 (La.App. 2nd Cir. 5/4/94), 637 So.2d 672, writ denied, 94-1491 (La. 9/23/94), 642 So.2d 1295, a claimant who had established a prima facie case of entitlement to supplemental earnings benefits was tendered a list of jobs approved by his treating physician. Though the claimant resided in Tallulah, the list consisted of jobs located in Delhi and Rayville, Louisiana, approximately 15 and 40 miles, respectively, from the claimant's home. Because the claimant lived in a rural area, had previously been provided transportation by his employer, and had no means of transporting himself to the jobs on the tendered list, the hearing officer concluded that the employer had failed to carry its burden under La.R.S. 23:1221(3)(c)(i). On appeal, the employer relied on Bankston v. Scaffolding Rental, 513 So.2d 307 (La.App. 1st Cir.1987), which held that jobs located in Baton Rouge, approximately thirty miles from the claimant's residence, were within the claimant's reasonable geographic region. The Henton court, however, found the facts of Bankston distinguishable, noting the claimant in that case had previously worked in Baton Rouge and was [physically] capable of commuting that distance, and affirmed the hearing officer. Henton, 637 So.2d at 676.[6]
In Kennedy v. Commercial Union Ins. Co., 572 So.2d 319 (La.App. 3rd Cir.1990), the employer located a position and obtained a job interview with another firm for a claimant who had sustained a work-related back injury. Though the claimant was never interviewed for the position, the employer subsequently reduced the claimant's supplemental earnings benefits by the amount which the claimant would have been able to earn at the other firm. While the court of appeal decided that the employer had failed to meet its burden of proof on other grounds, it noted in dictum:
If Kennedy did qualify and was accepted for this position, he would have faced a 40 to 50 mile drive, one way, from his home in Eunice to Lafayette. Because of our holding herein, we do not reach the question of whether this would be "in the employee's or employer's community or reasonable geographic region" under La.R.S. 23:1221(3)(c)(i). We only note that it does not seem reasonable to expect a man suffering from chronic back pain to drive 80 to 100 miles a day for a job that only pays $125.00-$150.00 a week.
Kennedy, 572 So.2d at 321 n. 1; see also Bailes v. BE & K Construction, 26,528 (La. App. 2nd Cir. 1/25/95), 649 So.2d 167; Hill v. L.J. Earnest, Inc., 568 So.2d 146, 154 (La. App. 2nd Cir.), writ denied, 571 So.2d 652 (La.1990).
In the instant case, the only evidence put forth by Domino's of employment available in claimant's community or reasonable geographic region is its offer to Mr. Daugherty of a light-duty desk job at Domino's Baton Rouge facility. While Mr. Daugherty accepted and worked at this job during the months of June, July, and August of 1989, Mr. Daugherty was forced to quit the job in late August of 1989 due to his injury-related leg spasms which prohibited him from driving to and from his home in Baker to the Domino's facility in Baton Rouge. As previously noted, though Mr. Daugherty's treating physician had released him to return to such light-duty work in June of 1989, he again listed Mr. Daugherty as disabled in late August of 1989 due to the leg spasms. As described above, Mr. Daugherty and his physician apparently pursued every available treatment *955 option over the next 20 months, but were unable to resolve the problem. Domino's did not introduce any evidence of any other jobs which Mr. Daugherty is physically able to perform and which are available in the limited geographic region near his home within which Mr. Daugherty is able to travel given his disability. In sum, the record evidence in this case, supported by medical and lay testimony, shows Mr. Daugherty is able to perform the actual job offered by Domino's, but, due to his injury-related condition, is unable to travel more than five to ten miles from his home to perform that job.
Applying the legal precepts discussed above to the particular facts of this case, it is clear the hearing officer was manifestly erroneous in his determination that Domino's has carried its burden of proof under La.R.S. 23:1221(3)(c)(i). Considering Mr. Daugherty's work-related physical inability to drive more than a short distance from his home in Baker, Domino's has clearly failed to satisfy its burden of proving employment is available to Mr. Daugherty within a reasonable geographic region by offering him a light-duty job at its facility in Baton Rouge, some thirty miles from his home. Because Domino's failed to offer any other evidence as to employment available to Mr. Daugherty, his supplemental earnings benefits may not be reduced by any amount. Mr. Daugherty's pre-accident earnings, with no La.R.S. 23:1221(3)(c)(i) reduction, entitle him to receive the maximum amount of supplemental earnings benefits allowed in his case, $267.00 per week, retroactive to August 29, 1989, the date he was listed as disabled by his treating physician.

Penalties and Attorney's Fees
Mr. Daugherty also assigned as error in this court the lower courts' failure to award him penalties and attorney's fees due to Domino's: (1) alleged failure to timely forward a medical report to Mr. Daugherty's counsel after written request; (2) alleged late payment of one week's compensation; and (3) alleged failure to timely pay two medical bills.[7] As the judgment of the hearing officer was silent as to these claims, the court of appeal, citing Testa Distributing Co. v. Tarver, 584 So.2d 300, 303 n. 4 (La.App. 1st Cir.1991), presumed them denied. After review of the record, the court of appeal, with one judge dissenting, found no error in the hearing officer's failure to award such penalties and attorney's fees.
Our review of the record evidence, however, shows the lower courts were manifestly erroneous in failing to award Mr. Daugherty penalties and attorney's fees for Domino's failure to forward the medical report of Dr. Dulligan's examination of Mr. Daugherty. La.R.S. 23:1125 requires an employer, upon written request, to furnish an employee or his representative with a copy of any report issued to an employer from an examination of the employee which was conducted at the employer's request, within thirty days of the date of the employee's written request. An employer who, without just cause, fails to furnish the employee with any such report within thirty days of written request, is liable to the employee for a civil penalty in the amount of $250.00, plus a reasonable attorney's fee for the collection of such penalty. La.R.S. 23:1125; see, e.g., Vollenweider v. New Orleans Public Service, Inc., 466 So.2d 804 (La.App. 4th Cir.1983), writ denied, 468 So.2d 577 (La.1985).
In the instant case, Mr. Daugherty was referred to Dr. Dulligan by Chris Brocato of Alexis Risk Management, Domino's adjustor, for examination on August 3, 1989, and Dr. Dulligan issued a report of his examination of Mr. Daugherty to Alexis Risk Management. On January 19, 1990, Kenneth Williams, Mr. Daugherty's counsel, sent a letter to Mr. Brocato requesting that he forward all medical records received by Alexis Risk Management relative to Mr. Daugherty's condition. Mr. Williams wrote to Mr. Brocato again on *956 January 30, 1990, repeating his request for these records. Mr. Williams testified that on March 13, 1990, he spoke with Mr. Brocato on the telephone and again requested that he be sent the medical records. On April 30, 1990, Mr. Williams wrote again to Mr. Brocato, explicitly noting Alexis Risk Management's repeated promises to forward the medical records and its repeated failure to do so. Mr. Daugherty filed his claim against Domino's in early May of 1990. Mr. Williams thereafter addressed his demand for medical records to Domino's counsel, who subsequently produced the requested report. Domino's made no effort to rebut this evidence at the hearing and, tellingly, wholly ignored the matter in its brief filed in this court. As Mr. Daugherty clearly demonstrated that Domino's failed to provide him with the medical report of Dr. Dulligan for more than the statutorily prescribed thirty day period after his written request, and Domino's has wholly failed to offer any justification for its failure to timely provide Mr. Daugherty with this report, we find the hearing officer manifestly erred in failing to award Mr. Daugherty the statutory penalty of $250.00, plus reasonable attorney's fees for the collection of this penalty.
Our review of the record regarding Mr. Daugherty's claim of entitlement to penalties and attorney's fees for Domino's alleged late payment of two medical bills also reveals error in the hearing officer's failure to award penalties and attorney's fees to Mr. Daugherty for the late payment by Domino's of one of the bills. Mr. Daugherty testified at the hearing that Domino's had failed to timely pay: (1) a bill from Dr. Ioppolo for $90.00; and (2) a bill from the Surgi-center for $420.00. The only evidence regarding the $90.00 bill from Dr. Ioppolo in the record is that the bill, issued on April 19, 1990, was not paid by Alexis Risk Management until August of 1990. Mr. Daugherty introduced the bill into evidence and testified he had been billed for it long after it was due. However, the bill was originally sent to Mr. Daugherty, Mr. Daugherty failed to testify as to when he forwarded the bill to Alexis Risk Management or offer any proof as to when Alexis Risk Management received the bill, and there is no "received" date stamped on the bill by Alexis Risk Management showing when Alexis received the bill. We are therefore unable to determine from the evidence in the record whether Alexis Risk Management paid the bill within sixty days of its receipt of the bill and, as such, cannot say that the hearing officer erred in failing to award Mr. Daugherty penalties and attorney's fees for the late payment of this bill.
However, the late payment of the $420.00 Surgi-center bill is a different matter. This bill, also introduced into evidence, is clearly stamped "received" on March 5, 1990, by Alexis Risk Management, and was paid by Alexis Risk Management on May 11, 1990, over 60 days after its receipt. At the hearing in this matter, Domino's offered no evidence, explanation, or justification for its late payment of this bill and, in its brief filed in this court, Domino's Pizza admits payment was made on the bill sixty-seven days after its receipt. Where the fact of late payment is uncontradicted and an employer fails to show that the late payment resulted from conditions over which the employer had no control or that the employee's right to have the bill paid by the employer is controverted, La.R.S. 23:1201 and 1201.2 mandate an award of penalties and attorney's fees. See, e.g., LaHaye v. Westmoreland Casualty Co., 509 So.2d 748 (La.App. 3rd Cir.1987). We therefore find the hearing officer manifestly erred in failing to award Mr. Daugherty penalties and attorney's fees for Domino's failure to timely pay this accident related medical bill.
Finally, our review of the record regarding Domino's alleged late payment of Mr. Daugherty's March 11-17, 1990, compensation payment, reveals no error in the hearing officer's failure to award Mr. Daugherty penalties and attorney's fees pursuant to La. R.S. 23:1201 and 1201.2. At the initial hearing in this matter on January 22, 1991, Mr. Daugherty introduced a letter dated April 30, 1990, written by his attorney to Chris Brocato of Alexis Risk Management, Domino's adjustor, which informed Alexis Risk Management that it had failed to make payment to Mr. Daugherty for the relevant compensation period. Mr. Daugherty testified *957 at the hearing that he ultimately received the payment for the March 11-17, 1990, period approximately one and one-half months before the date of the initial hearing in this matter on January 22, 1991, which would place payment in either November or December of 1990, well over sixty days after the April 30, 1990, written notification to Alexis Risk Management of the missed payment. However, although Mr. Daugherty claimed to have a check stub which would show the late payment of these benefits, he failed to introduce the stub at either the initial hearing or at the resumed hearing on May 1, 1991. As such, there is insufficient evidence in the record to prove Domino's failed to timely make the March 11-17, 1990, compensation payment. We therefore cannot say the hearing officer erred in failing to award Mr. Daugherty penalties and attorney's fees for Domino's alleged failure to timely make the March 11-17, 1990, compensation payment to Mr. Daugherty.

CONCLUSION
The court of appeal affirmed the hearing officer's determination that Mr. Daugherty was neither permanently nor temporarily totally disabled. After a thorough review of the record, we find no error in this determination and therefore affirm the lower courts' approval of Domino's conversion of Mr. Daugherty's benefits from temporary total disability to supplemental earnings benefits.
However, under the particular facts of this case, Domino's failed to carry its burden under La.R.S. 23:1221(3)(c)(i) of proving work within Mr. Daugherty's physical capabilities was available to him in his reasonable geographic region through its offer of a light-duty position at Domino's Baton Rouge facility, such that claimant's supplemental earnings benefits should be reduced. We therefore reverse the hearing officer and the court of appeal and remand the matter to the hearing officer for an award of supplemental earnings benefits, retroactive to August 29, 1989, consistent with this opinion.
We further find the hearing officer's failure to award penalties and attorney's fees for Domino's failure to forward requested medical records and failure to timely pay the Surgi-center bill was manifestly erroneous. We therefore reverse the hearing officer and court of appeal as to these items and remand the matter to the hearing officer for computation of penalties to be awarded and an assessment of attorney's fees consistent with this opinion.
DECREE
AFFIRMED IN PART, REVERSED IN PART; REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
VICTORY, J., dissents.
NOTES
[*] Because of the vacancy created by the resignation of Dennis, J., now a judge on the United States Court of Appeals for the Fifth Circuit, there was no justice designated "not on panel" under Rule IV, Part 2, Sec. 3. Panel included Chief Justice Calogero and Justices Marcus, Watson, Lemmon, Kimball, Johnson and Victory.
[1] Although Mr. Daugherty named Zurich-American Insurance Company as Domino's insurer and Zurich-American Insurance Company answered the petition, the parties stipulated at the compensation hearing that Domino's was in fact self-insured for this claim and that the claim was adjusted by Alexis Risk Management.
[2] Mr. Daugherty's petition did not state whether he was specifically contesting Domino's conversion of his status from temporary total disability to capable of employment and therefore entitled only to supplemental earnings benefits. Instead, Mr. Daugherty's petition simply asserted he is entitled to "compensation at the full rate." Mr. Daugherty contended at the hearing, however, that he is either permanently or temporarily totally disabled.
[3] As stated previously herein, Mr. Daugherty's petition in the Office of Worker's Compensation requested benefits payable at the full rate retroactive to August 28, 1989, the date Dr. Ioppolo again listed him as disabled. Mr. Daugherty's pleadings in the court of appeal and in this court, however, requests the same relief retroactive August 29, 1989.
[4] A worker's compensation claimant's entitlement to worker's compensation benefits is governed by the law in effect at the time of his accident. Freeman v. Poulan/Weed Eater, 93-1530 (La. 1/14/94), 630 So.2d 733, 738; Bruno v. Harbert Intern. Inc., 593 So.2d 357, 360 (La. 1992).
[5] La.R.S. 23:1221(3) (1988) provided, in pertinent part:

(3) Supplemental earnings benefits.
(a) For injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at the time of injury, supplemental earnings benefits equal to seventy-four percent of the difference between ninety percent of the average monthly wages at the time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
(b) For purposes of Subparagraph 3(a), of this Paragraph, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including, but not limited to, earnings from odd-lot employment, sheltered employment, and employment while working in pain.
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region.
[6] In citing Maxie and Henton, we do not mean to imply that an employer has a responsibility to provide transportation for the injured employee to an offered or available job. Instead, these cases are cited for the simple proposition that the determination of whether an offered or available job is within the employee's reasonable geographic region necessarily involves consideration of whether the employee is physically able to reach the offered or available job.
[7] Though Mr. Daugherty claimed entitlement to penalties and attorney's fees in his complaint filed in the Office of Worker's Compensation for Domino's failure to reinstate his compensation benefits to the full level retroactive to August of 1989, and assigned that hearing officer's failure to award such penalties and attorney's fees as error in the court of appeal, Mr. Daugherty's application in this court did not assign the lower courts' denial of this claim as error, nor did he argue the claim in his brief filed in this court. As such, any claim of entitlement to such penalties and attorney's fees has been abandoned.