688 So.2d 623 (1997)
Clarence JOYNER, Plaintiff-Appellee,
v.
DAVISON TRANSPORT, INC., Defendant-Appellant.
No. 28880-CA.
Court of Appeal of Louisiana, Second Circuit.
January 22, 1997.
Rehearing Denied February 20, 1997.
*624 Weems, Wright, Schimpf, Hayter & Carmouche by Mark A. Perkins, Shreveport, for Defendant-Appellant.
James E. Franklin, Shreveport, for Plaintiff-Appellee.
Before HIGHTOWER, WILLIAMS and PEATROSS, JJ.
PEATROSS, Judge.
In this worker's compensation case, the defendant, Falco S & D, Inc. ("Falco"), appeals an adverse judgment from the Office of Workers' Compensation ("OWC"), wherein the hearing officer ruled that since the job offered to plaintiff, Clarence Joyner ("Joyner"), was not within Joyner's reasonable geographic area, Joyner was entitled to supplemental earnings benefits based on a zero discount. The plaintiff answered the appeal to demand penalties and attorney's fees. For the reasons assigned below, we affirm the judgment of the hearing officer.

FACTS
Joyner, a resident of Springhill, Louisiana, began working as a truck driver for Falco in May, 1990. Four days of the week Joyner worked out of Falco's Haynesville station, which was about nineteen miles from his home, and one day of the week he worked out of Falco's Fillmore station, which is about 42 miles from his home. On November 24, 1992, Joyner fell and injured his back while loading oil into the transport truck he drove for Falco.
Falco made an appointment for Joyner to see Dr. Don Burt the next day. Joyner complained of lower back pain which radiated down his left leg. In May, 1993, Dr. Burt performed a surgical procedure known as a laminotomy after conservative treatment failed to alleviate Joyner's pain. Through this procedure, bone was removed in order to relieve pressure on the impinged nerve and to allow the nerve greater room.
Falco's insurer, Davison Insurance Company, paid Joyner temporary total disability benefits in the amount of $301.19 from December, 1992 until September, 1994. During this period Falco was attempting to find Joyner *625 a new job since he had been released to return to light-duty work. Falco first offered the job of a parts deliverer, but this position involved lifting heavy equipment and, thus, was not suitable for Joyner. Next, Falco mistakenly offered Joyner the job of dispatcher at its Ruston station. This job entailed working on a computer and supervising 25 to 50 people; Joyner did not have the skills required to perform this job. Finally, Falco offered Joyner the position of night dispatcher at the Filmore station. This job required Joyner to travel about 84 miles round trip and work a twelve hour shift four days a week.
After Joyner refused the final job offer, Falco filed a form 1002 with the OWC giving notice of payment modification. Falco reduced Joyner's compensation to supplemental earnings benefits of $75.84 a week, based on an average post injury weekly wage from the tendered dispatcher job of $451.76. In January, 1995, after offering the Filmore dispatcher position to Joyner a second time, Falco terminated Joyner's employment.
Before being terminated, Joyner filed a form 1008 with the OWC asserting that his supplemental earnings benefits should be continued at the amount of $301.19. After the two-day trial the hearing officer ruled that Joyner was entitled to supplemental earnings benefits based on a zero discount. The hearing officer found that the Filmore dispatcher job was not available in Joyner's reasonable geographic area and that the job was not immediately available to Joyner on a fulltime basis due to the lengthy hours of night duty on a full-time basis. The hearing officer also ruled that penalties and attorney's fees should not be awarded because Falco reasonably controverted all issues. From this judgment Falco appeals the award of undiscounted supplemental earnings benefits and Joyner answers to demand penalties and attorney's fees.

DISCUSSION

Supplemental Earnings Benefits
Entitlement to supplemental earnings benefits is governed by LSA-R.S. 23:1221(3). To recover these benefits, the employee must first prove by a preponderance of the evidence that he is unable to earn wages equal to ninety percent or more of the wages he earned before the accident. LSA-R.S. 23:1221(3)(a). Once the employee's burden is met, the burden of proof then shifts to the employer, who, if he wishes to defeat or reduce supplemental earnings benefits, bears the burden of proving that the employee is physically able to perform a certain job, that job was available to the employee and that the job offered or available is in the employee's or the employer's community or reasonable geographic region. LSA-R.S. 23:1221(3)(c)(i); Daugherty v. Domino's Pizza, 95-1394 (La.5/21/96), 674 So.2d 947.
The amount of supplemental earnings benefits is then based on the difference between the average weekly wage earned by the employee prior to the accident and the employee's earning capacity after the injury. Daugherty, supra. On appellate review, the issue of reduction of supplemental earnings benefits is governed by the manifest error or clearly wrong standard of review. Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733.
It is well established that the worker's compensation act is remedial in nature, and that the provisions of the worker's compensation law should be liberally construed in favor of the claimant. Daugherty, supra.; Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52 (La.1993), and cases cited therein. As part of the determination of whether an employer has carried its burden under LSA-R.S. 23:1221(3)(c)(i) of proving work is available to the claimant, courts must consider all factors that affect the claimant's ability to engage in the offered or available employment. Daugherty, supra.
In the present case, Joyner was offered a job which would require him to drive 42 miles to the Filmore station, work a twelve hour shift and drive 42 miles back to his home, four days a week. While all physicians testified that Joyner would physically be able to perform this job[1], we conclude *626 that the hearing officer was not clearly wrong in ruling that the job was not within Joyner's reasonable geographic area and that the job was not "immediately `available' to Joyner." In Henton v. Walker & Wells Contractors, Inc., 25,821 (La.App.2d Cir. 5/4/94), 637 So.2d 672, writ denied, 94-1491 (La.9/23/94), 642 So.2d 1295, this court found that the hearing officer was not clearly wrong in concluding that the defendant had failed to prove that there was work available to the claimant in his reasonable geographic area that he was physically able to perform. The factors considered by this court in that case included the distances of fifteen to forty miles from the claimant's home to the jobs offered, the fact that claimant had no means of transportation and lived in a rural area and the fact that prior to his injury the claimant's employer had provided him with transportation.
In the present case, there are a number of factors the hearing officer may have considered. First, Joyner still complained of pain in his back; no physician could state that Joyner was no longer experiencing any pain. Second, Joyner would have to drive a total of 84 miles, four days a week, from his home in Springhill to the station in Filmore. While it is true that Joyner drove to Filmore one day a week prior to his accident, he had not previously driven this distance four days out of the week with pain in his back. Third, Joyner testified that he did have a vehicle, but it was old with high mileage and he did not trust it to drive this distance four days a week. Finally, Joyner would be working a night shift of twelve hours, after driving 42 miles, and would have to drive 42 miles back to his home; he essentially would be working fourteen hours. With this litany of factors, we cannot say that the hearing officer was clearly wrong in her ruling.
Falco also argues that if this court finds the Filmore job unavailable to Joyner, the supplemental earnings benefits should still be discounted by at least a minimum wage figure since the claimant was released to return to light duty work. Falco, however, has failed to introduce any evidence of a job available to Joyner within his reasonable geographic area and, thus, Falco has not met its burden of proof as required by LSA-R.S. 23:1221(3) to have the supplemental earnings benefits discounted by any amount. Daugherty, supra at 955. The hearing officer was correct in refusing to discount the supplemental earnings benefits by the minimum wage figure.

Penalties and Attorney's Fees
Joyner argues that because Falco was arbitrary and capricious in reducing the supplemental earnings benefits, the hearing officer erred in denying penalties and attorney's fees. A compensation insurer or employer is liable for attorney's fees when it arbitrarily, capriciously or without probable cause, terminates or refuses to pay benefits. LSA-R.S. 23:1201.2; Holmes v. International Paper, 559 So.2d 970 (La.App. 2d Cir. 1990). That determination depends primarily upon the facts existing and known to the employer at the time the employer denies benefits. Holmes, supra. Whether the employer and/or insurer should be cast with penalties and attorney's fees is a question of fact which should not be disturbed on appeal absent manifest error. Vernon v. Wade Correctional Institute, 26,053 (La.App.2d Cir. 8/19/94), 642 So.2d 684.
In the present case, the hearing officer found that Falco had reasonably controverted all issues therein. Falco claimed that it did not know that the parts deliverer job entailed the heavy lifting, and that the Ruston dispatcher position was offered by mistake. Falco also claimed that since all physicians stated Joyner could perform the Filmore job, it thought the job would be suitable for Joyner. Falco also presented evidence that the position was always a twelve hour job and that the position had always been in existence. Based on the record presented to us, we conclude that the *627 hearing officer did not commit manifest error in denying penalties and attorney's fees.

CONCLUSION
For the foregoing reasons, the judgment of the hearing officer is affirmed.
AFFIRMED.
HIGHTOWER, Judge, Dissenting in part and concurring in part.
The physicians agree that the duties of the offered employment are "perfect" or "ideal" for Joyner. The requisite commute, made weekly by him prior to his injury, has also been approved by the doctors. Yet, the majority opinion reaches the conclusionwith which I respectfully cannot agreethat this job is now outside claimant's reasonable geographic area. Accordingly, I dissent from the affirmance of undiscounted supplemental earnings benefits.
As mentioned in the majority opinion, the treating orthopedist, two examining doctors, and the occupational therapist all concur that the plaintiff can physically perform light duty work. Clearly, the requirements of the night dispatcher position classify that job as only sedentary duty. Joyner would answer the telephone, receive messages from Falco customers, and relay the delivery or pickup directions to the drivers. Additionally, he would record the calls in a log book. During the twelve-hour shift, he could sit or stand as he needed and, in fact, the employer testified that a cot could even be set up in an adjacent room for claimant's benefit, if necessary. The physicians specifically indicated that claimant could perform the duties entailed.
In reference to educational requirements, the daily logs kept by Joyner as a trucker plainly reveal his ability to perform the duties of the night dispatcher position. Indeed, his former employment required much more complicated paperwork than would be demanded in the new position. Even plaintiff's expert vocational counselor, Dr. Richard Galloway, acknowledged that his client is well equipped to handle these responsibilities.
The claimant, the hearing officer, and now the majority rely heavily upon Henton, supra, to classify the Fillmore position as outside the employee's reasonable geographic area. The employer in that case, however, had previously provided transportation for its employee, while Falco had not so accommodated Joyner, a truck driver. More comparable to the instant circumstances, the court in Bankston v. Scaffolding Rental & Erection Services, Inc., 513 So.2d 307 (La.App. 1st Cir.1987), concluded that jobs in Baton Rouge, located thirty miles from that claimant's home, were reasonably available where the plaintiff had previously worked in that city.
While working as a trucker, Joyner drove once a week to the facility in Fillmore to get his vehicle and begin his hauling, in addition to traveling nineteen miles to Haynesville four days per week. For persons residing in rural Louisiana, such commutes are not uncommon. See generally, e.g., Mayeux v. Kentucky Fried Chicken, 28,163 (La.App.2d Cir. 04/03/96), 671 So.2d 1261, writ denied, 96-1133 (La.06/07/96), 674 So.2d 966. Joyner quite obviously did not consider Fillmore to be outside his reasonable geographic area before his injury. Thus, that distance can now be deemed unreasonable only if his injury affects his physical ability to make the drive. Cf. Daugherty, supra (where the doctor changed his recommendation when injury-related problems emerged after the plaintiff daily drove approximately thirty miles to work for three months). None of the physicians disapproved of the indicated daily excursions on the part of Joyner, although they understandably could not guarantee that no pain would be encountered.[1] Dr. Burt in fact noted that an automobile drive over this distance would be far more comfortable for plaintiff than driving, as before, a truck.
Nor am I impressed with plaintiff's contention that his present vehicle cannot be depended *628 upon to transport him daily to Fillmore. Prior to his work accident, Joyner successfully and regularly made this trip, both by car pooling and by driving alone. Although he claims to have sold a more reliable vehicle to help meet expenses before his worker's compensation checks began in late 1992, Joyner's trial testimony indicates that he sold a 1966 Ford truck which he "wasn't able to drive ... anyway." Certainly, the wages he could earn at full-time employment, coupled with the supplemental earnings benefits to be paid by Falco, would ameliorate any such transportation problems.[2]
Moreover, La.R.S. 23:1221(3)(c)(i) requires that the employment be within the employee's or the employer's reasonable geographic region. The Fillmore facility, operated by Falco, unquestionably is within that company's reasonable geographic region.[3]
Thus, I would conclude that the hearing officer clearly erred in awarding supplemental earnings benefits based upon a zero earning capacity. Instead, to reflect the salary Joyner could garner as the night dispatcher for Falco, his weekly stipend should correctly be reduced to $75.84. Although the offered employment requires eight hours of overtime weekly, inasmuch as claimant previously worked ten to twelve hours per day, defendant's calculations of SEBs are not improper.
On the other hand, I obviously agree with the majority's conclusion that penalties and attorney's fees are not warranted in this situation.
Additionally, it should probably be emphasized that the tendered night dispatcher job was not "created" for Joyner. At trial, in brief, and again at oral argument, plaintiff maintained this had originally been an eight-hour-per-day job and that the employer had arbitrarily increased the hours, either to reduce its SEB obligation or to make the position completely unacceptable for Joyner. The record belies these assertions. Originally, the rehabilitation counselor employed by Falco inadvertently described the job as five days per week and eight hours per day. When she sought approval of the description, however, Falco promptly corrected the mistake and properly changed the job analysis form to reflect four days per week from 6:00 p.m. to 6:00 a.m., hours that had always been required by this position.

APPLICATION FOR REHEARING
Before MARVIN, C.J., and HIGHTOWER, WILLIAMS, GASKINS and PEATROSS, JJ.
Rehearing denied.
NOTES
[1] It is interesting to note that the certified rehabilitation counselor Galloway testified that the drive and hours of the Filmore job worried him because of Joyner's pain; the orthopedic surgeon Green stated that it would be better if Joyner did not have to drive this far; and the orthopedic surgeon Burt stated that it might be better if Joyner had a job where he did not have to drive this distance or work a twelve hour shift.
[1] Nor did the physicians express any concern that the drive and twelve-hour shift together would equate to almost a fourteen-hour day. Instead, they especially noted the freedom of movement and accommodations for comfort available for the night dispatcher position. Moreover, the surveillance video in evidence calls into considerable suspicion Joyner's complaints of pain while driving.
[2] This court has previously rejected a contention that a plaintiff's lack of reliable transportation precluded out-of-town employment from being deemed within the reasonable geographic region. See Mayeux, supra.
[3] As defendant observes, the actual text of La. R.S. 23:1221(3)(c)(i) refers to employment which the plaintiff is "physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region." (Emphasis added.) Falco focuses upon the disjunctive nature of the provision to argue that, if a job has been offered to the claimant, a defendant is not also required to prove that it exists in the reasonable geographic region. This issue is not addressed in the majority opinion. I have pretermitted any such discussion, of course, in that the tendered employment in the present case falls within the employee's and employer's geographic area.