646 So.2d 1088 (1994)
Willis JACKSON
v.
A.I.A.
No. 94-CA-371.
Court of Appeal of Louisiana, Fifth Circuit.
November 16, 1994.
*1089 Arthur J. Brewster, Seelig, Cosse, Frischhertz & Poulliard, New Orleans, for plaintiff/appellant, Willis Jackson.
Raymond S. Maher, Jr., Bastian, Brooks & Wynne, New Orleans, for defendant/appellee, A.I.A.
Before WICKER and GOTHARD, JJ., and BOUTALL, J. Pro Tem.
JOHN C. BOUTALL, Judge Pro Tem.
Plaintiff/appellant, Willis Jackson, appeals a judgment of the Office of Worker's Compensation dismissing his claim for benefits. For the following reasons we amend, and as amended, affirm and remand.

FACTS
Plaintiff, Willis Jackson, was an employee of Professional Construction Services, Inc. (d/b/a A.I.A.) on July 21, 1989, when, while in the course and scope of his employment as a cement finisher, he fell through a scaffold to the floor and injured his neck and back. After preliminary treatment at Methodist Hospital Industrial Clinic, Mr. Jackson was unable to return to his strenuous job. In August, plaintiff saw Dr. Harry Hoerner, an orthopedic surgeon, who, following x-rays, diagnosed a cervical muscular ligamentous strain with evidence of degenerative disc disease, as well as a lumbosacral muscular ligamentous strain. EMG nerve conduction studies and an MRI were also performed, which confirmed the diagnosis and further showed degenerative changes in the facet joints at L3-4 and L4-5. Dr. Hoerner ordered plaintiff to undergo physical therapy and prescribed several medications for pain and swelling. Based on his findings and history, he opined that the cause of plaintiff's complaints were related to his employment injury, including permanent aggravation of the degenerative changes (which condition, prior to the accident, had been asymptomatic). Dr. Hoerner felt that plaintiff had reached maximum medical improvement as of April 21, 1992. Mr. Jackson was restricted from heavy lifting over 30 pounds, long standing or walking; there are some restrictions on climbing, stooping, kneeling, balancing, crouching, and crawling. Further restrictions include not working at any heights, continuous working around moving machinery, or working above shoulder level. Dr. Hoerner stated that while he felt plaintiff probably exaggerated his complaints, he did not think it was severe exaggeration, nor did he find that plaintiff was malingering. In the course of treatment, Dr. Hoerner saw plaintiff for about 16 times. Plaintiff underwent physical therapy for several months at *1090 the direction of Dr. Hoerner. Importantly, under cross-examination, Dr. Hoerner stated that he had no problem with the opinions of the other physicians, infra.
The compensation insurer referred plaintiff to Dr. Gordon Nutik for an evaluation on November 9, 1989. After examining plaintiff and reviewing the medical tests, Dr. Nutik diagnosed soft tissue strains in the neck and low back at the time of the accident; he also found the degenerative changes in the cervical spine noted by Dr. Hoerner, but did not see evidence of such in the lumbar spine. Dr. Nutik felt that as of that time, plaintiff should have been able to return to light work with the anticipation that he would be able to progress to his regular job over a four to six week period.
Dr. Nutik continued thusly:
I think that we're dealing with a process which isn't entirely orthopedic at this point, that I can't really characterize.
But I think that if he came into the work site like he came into my office the second time, certainly I don't think he'd stay at work. I think there is a problem there, and it's not orthopedic.
From the orthopedic standpoint and objective findings, I can't see a reason why he couldn't go back. I think there is something else that I can't really comment on.
Dr. Nutik also felt that plaintiff had exaggerated his symptoms to a certain degree.
Dr. Edmund Landry, also an orthopedist, was appointed by the court under LSA-R.S. 23:1123, to examine plaintiff. In his deposition, Dr. Landry stated that plaintiff had been referred by the compensation insurer; further, he addressed his medical report to the insurer rather than to the court. Dr. Landry stated that plaintiff had cervical degenerative disc disease and mild degenerative arthritis of the lumbar spine, and was not disabled from returning to his regular employment. He also felt that plaintiff's symptoms were exaggerated. Dr. Landry had benefit of his physical examination of plaintiff, along with Dr. Hoerner's records and the previous diagnostic studies; Dr. Landry did not order or perform any tests other than x-rays.
Also entered into the record was a psychological evaluation, dated May 25, 1991, done in connection with plaintiff's claim for Social Security. The evaluation showed plaintiff to be mildly mentally retarded, functioning between a third and fourth grade level. After discussing that some of the tests administered did not produce valid results, the examiners concluded "... there are probable significant academic deficits which would limit his vocational choices. Due to the retardation, academic handicaps, as well as poor mental control and memory deficits, employability would be very limited."
Finally, Mr. Jackson himself testified that in his job as a cement finisher, he would have to lift cement bags weighing around 100 pounds. His job included a lot of overhead work, working on ceilings and walls. Prior to his accident, he had had no on-the-job accidents or other accidents or claims. He had no previous problems with his back, and never missed work due to injury. After the accident he returned to work for about a week and a half, but had to discontinue due to pain. Following his visit to the industrial physician at Methodist, plaintiff was restricted to light duty work at that time; the employer put plaintiff to work flagging cement trucks, but after about an hour he was told to help shovel cement. He tried this for three hours, but could not continue. After taking some medication, plaintiff was taken home by the supervisor. He returned to his doctor, who again restricted him to light work. When he returned this written restriction once again to his employer, he was told that there was no such work. The employer never called or offered employment to plaintiff following that, nor was he offered vocational rehabilitation. Plaintiff did not seek other work following this because of pain, from which he continues to suffer.
Defendant presented no witnesses, the only defense evidence introduced being the depositions of Drs. Nutik and Landry.
It was stipulated at trial that the average weekly wage was $360.56, giving plaintiff a compensation rate of $240.39. Plaintiff was paid compensation for 56 weeks for a total of $13,623.00. The benefits were paid through *1091 September 6, 1990. Medical bills in the amount of $12,565.00 were also paid.
The hearing officer found that there was no medical evidence to prove that Mr. Jackson was entitled to benefits beyond those weeks already paid.

ANALYSIS
The case is governed by the Worker's Compensation statutes, LSA-R.S. 23:1021 et seq.
Our Supreme Court has interpreted LSA-R.S. 23:1221(3) which defines supplemental earnings benefits, as follows:
Entitlement to supplemental earnings benefits is governed by LSA-R.S. 23:1221(3). In order to recover, the employee must first prove by a preponderance of the evidence that he is unable to earn wages equal to ninety percent or more of the wages he earned before the accident. The analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that worker's compensation law is to be liberally construed in favor of coverage. `In determining if an injured employee has made out a prima facie case of entitlement to supplemental earnings benefits, the trial court may and should take into account all those factors which might bear on an employee's ability to earn a wage.' Once the employee's burden is met, the burden of proof then shifts to the employer, who, if he wishes to contend that the employee is earning less than he is able to earn so as to defeat or reduce supplemental earnings benefits, bears the burden of proving that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region.

Smith v. Louisiana Dept. of Corrections, 633 So.2d 129 (La.1994), citations omitted.
In determining whether Mr. Jackson made out a prima facie case of entitlement to benefits, our review of the medical evidence discloses that all three physicians who treated and/or examined the plaintiff felt that plaintiff was exaggerating his symptoms, to differing degrees; that plaintiff could return to work; and we note the lack of objective evidence to support plaintiff's complaints.
The unanimity of opinion amongst these physicians, along with the opportunity of the trial court to evaluate the plaintiff's live testimony, compels us to conclude there was indeed sufficient basis in the record to support the finding of the trial court. While it is clear that the testimony of the treating physician is entitled to great weight, the trial court is not bound by it or by any expert testimony.
[T]he finding of disability within the framework of the worker's compensation law is a legal rather than purely a medical determination. It is the totality of the evidence, both medical and lay testimony, which must be examined by the trial court in making its determination on the question of disability and it is the function of the court to assess the weight to be accorded such testimony. The opinion of a physician or other medical expert does not necessarily determine a legal disability and the court may accept or reject the opinion expressed by a medical expert depending upon what impression the qualifications, credibility and testimony of that expert makes upon the court.

DeGruy v. Pala, Inc., 525 So.2d 1124 (La.App. 1 Cir.1988), writ denied, 530 So.2d 568 (La.1988).
While we are aware of the well accepted principal that the opinion of a treating physician is to be given more weight than the opinions of those doctors retained for trial purposes only, we also note that a treating physician's testimony must be weighed in light of other credible evidence. See Schouest v. J. Ray McDermott, 411 So.2d 1042 at 1044 (La.1982) citing Vicknair v. Southern Farm Bureau Cas. Ins. Co., 292 So.2d 747 (La.App. 4th Cir.1974), writ den. 296 So.2d 838 (La.1974). This court is not bound to blindly give credence to the opinion of a physician simply because he is the plaintiff's treating physician.

*1092 Latiolais v. Jernigan Bros., 520 So.2d 1126 (La.App. 3 Cir.1987).
Plaintiff suggests that because Dr. Landry believed that he had been referred by defendant, that his opinion was therefore biased. We find nothing in the deposition or report to support that conclusion. Absent some indication to the contrary, it should be presumed that a physician, when asked for his medical opinion, will give that opinion based on the medical evidence before him, not based on which party has requested it. Dr. Landry's medical opinion was not so antithetical to that of even plaintiff's physician so as to render it suspect.
The administrative law judge's findings of fact must be given great weight by an appellate court. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed unless manifestly erroneous or not supported by the evidence.

Guillotte v. Dynamic Offshore Contractors, 628 So.2d 234 (La.App. 3 Cir.1993).
See also Bailey v. Smelser Oil & Gas, 620 So.2d 277 (La.1993).
The consensus amongst the physicians was that plaintiff could return to work. There was a lack of objective physical findings to support the magnitude of plaintiff's continuing complaints. In short, it appears that while plaintiff may indeed have (psychological) problems, they are unrelated to his employment injuries. The well articulated and considered reasons for judgment evince a deliberate evaluation by the judge of the totality of the evidence. We find no manifest error in his determination that the plaintiff was not disabled and entitled to benefits beyond the weeks already paid.
We note, however, that although the court found that plaintiff is entitled to medical expenses, such were not awarded in the judgment. The judgment should be amended to reflect such award.

DECREE
The judgment of the hearing officer is amended to reflect that plaintiff is entitled to medical expenses incurred during the period of his disability. The judgment is affirmed in all other respects, and remanded to the Office of Worker's Compensation for determination of the medical benefits due. Plaintiff/appellant is assessed all costs of this appeal.
AMENDED, AND AS AMENDED, AFFIRMED AND REMANDED.