I2DALBY, Judge.
In this workers’ compensation matter, the claimant, Larry J. Livaudais, appeals the heating officer’s determination that he did not prove his entitlement to additional workers’ compensation benefits after they were terminated. Livaudais was employed by defendant, Montgomery Elevator Company, as an elevator installer’s helper. On March 9, 1994, he sustained a work related injury when stacked scaffolding fell on him, causing him to injure his left knee and back. After a doctor’s examination on March 17, 1994, Li-vaudais was diagnosed with contusions of the knee and lumbar strain.
Claimant’s medical expenses were paid, and temporary total disability benefits were paid from the incident through August 1, 1994, when benefits were terminated. All of the claimant’s medical expenses and prescriptions since the termination of benefits have been paid. Following the termination of benefits, Livaudais filed a Disputed Claim for Compensation (LDOL-WC form 1008) on August 23, 1994, | ¡¡seeking reinstatement of benefits, penalties and attorney fees for the defendant’s arbitrary and capricious denial of benefits. Livaudais has remained unemployed since the accident.
The matter went to trial on February 28, 1996. Post trial memoranda were timely filed and the matter taken under advisement. On March 18, 1996, the hearing officer rendered judgment in favor of defendant and against claimant, finding that Livaudais did not prove his entitlement to benefits past August 1, 1994, and that the defendant was not arbitrary and capricious in the termination of benefits.
On appeal, Livaudais argues that the hearing officer erred in finding that he did not prove his entitlement to supplemental earnings benefits (SEBs). He contends that the opinion of Dr. Edmund Landry, the orthopedic surgeon picked jointly by the parties for an IME, should not be afforded prima facie weight as per LSA-R.S. 23:1123. Livaudais also argues that the hearing officer used the wrong standard of proof in determining his entitlement to benefits. Finally, he argues that the healing officer erred in failing to find Montgomery arbitrary and capricious in the termination of his benefits.
At trial, Livaudais testified that stacked scaffolding fell over as he walked by, hitting his knee and causing him to twist to get away from the scaffolding, which injured his back. He worked the rest of the day, and reported the incident to his supervisor. He sought treatment on March 17, 1994 from Dr. Es-sam Ehnorshidy[1], an orthopedic surgeon, who diagnosed lumbar strain and a contusion of the knee.
Livaudais testified that the elevator operator helper’s job is heavy manual labor; he is regularly required to move heavy equipment and construction items, and to bend, squat, lift, stoop, and climb. He testified he had not returned to work since Uthe accident because of the pain. He was 54 years old at the time of the accident. In addition to a high school diploma, Livaudais attended a fine arts school for four years.
Dr. Elmorshidy’s records[2] indicate that he saw Livaudais on March 17,1994. Livaudais related that scaffolding fell on his leg and made him twist his back. At the time of the incident, claimant was 54 years old and had worked in the elevator business 17 years. He denied any prior accidents or back and knee injuries. His exam of the claimant’s back showed spasms of the paraspinal muscles and tenderness in the lower and mid back. The right knee showed contusions and slight swelling and tenderness, but no bone pathology. Dr. Elmorshidy treated Livau-dais with analgesic cream, heat, pain medication, and a muscle relaxant.
*234 The next visit was March 30. Livaudais continued to complain of back and knee pain. The records show that the clinical findings remain essentially unchanged from the first visit. The next.visit to Dr. Elmorshidy was on May 9. Livaudais’ symptoms and complaints remained the same. Dr. Elmorshidy scheduled an MRI. The records show that the doctor would consider the claimant’s re-ton to work if the MRI were normal. The MRI was performed on May 16, and its findings were normal of both the back and the knee.
The next doctor’s appointment appears to be June 2. The doctor’s records show some residual back pain, some slight spasms and tenderness in the lower lumbar spine, but improvement in the knee. The notes indicate some overall improvement in claimant’s condition, and an appointment was made for three weeks later.
15The appointment on June 30 shows a new symptom, pain and swelling of the left foot and ankle. Examination of the back showed some spasms and tenderness. The knee was tender but had no swelling or pain on extreme flexion. Dr. Elmorshidy recommended physical therapy for the back, but Livaudais testified that he never went to physical therapy. The notes for this appointment say: “Cannot return to work yet. Will have physical therapy and then make decision about returning to work or not.”
On July 27,1994, claimant was complaining of back pain and referred pain to the left leg with burning. Examination of the back still showed moderate spasm and tenderness. The knee showed some swelling. Claimant complained of popping in the knee. At this visit, Dr. Elmorshidy ordered an EMG of the lower lumbar spine and recommended a local steroid injection in the tender area of the lumbar spine. The EMG was performed in September, and showed normal findings with possible mild sensory neuropathy.
• The visit of August 24, 1994 showed the same back symptoms as before (spasm and tenderness). The knee is not mentioned. The doctor recommended a local cortisone injection.
The next visit the records show was on December 5, 1994. The knee exam was normal. Claimant complained of back pain, referred to the left leg. Examination showed some spasm and tenderness, particularly on the left side. Dr. Elmorshidy injected this area with Xylocaine and a steroid. The next visit was on December 29, 1994. Livaudais still complained of back pain. Examination showed some spasm, tenderness, and slight diminished sensation of the left leg and a slight weakness of the dorsiflexion of the big toe and foot. The patient was ordered to continue the same 16program, avoid strenuous activities, and an appointment was scheduled for four weeks later.
The records show a gap in treatment until July 13, 1995. Livaudais testified that he could not afford the treatment; however, on cross examination he admitted that both his doctor’s appointments and prescriptions were being paid by Montgomery. This back examination showed improvement, minimal spasms and tenderness, but otherwise normal. The knee showed signs of hamstring tendinitis, which was injected with a local cortisone and anaesthetic. Claimant was prescribed a hinged knee brace.
Livaudais saw Dr. Elmorshidy next on January 3,1996. An examination of the back showed moderate spasm and tenderness, and knee pain. The doctor injected the tender area of.the back with local steroid and Xylo-eaine.
A review of Dr. Elmorshidy’s records shows that the claimant’s back symptoms remained essentially unchanged on every visit. At his deposition, Dr. Elmorshidy testified from the above examination notes. Dr. Elmorshidy released claimant to light duty work on September 6,1994, and released him to work with restrictions on October 26,1994, despite the normal MRI, because of the strenuous nature of Livaudais’ job. He testified that he saw the claimant for more than one year, and could not decide if he was malingering. The doctor had treated other patients with complaint of pain and no objective findings. He testified that Livaudais might suffer from a soft tissue injury that continued to produce pain.
*235 Though Dr. Elmorshidy opined that Livau-dais could not return to his work as an elevator installer, due to the strenuous nature of that job, he was not disabled from other jobs.
fyLivaudais was examined by defendant’s doctor, Dr. Robert Steiner[3] (an orthopedic surgeon), on April 19, 1994. Claimant recounted the same accident history he gave to Dr. Elmorshidy and also related that doctor’s treatment of him. His most significant complaint was his left knee. The doctor noted slightly limited lumbar flexion but otherwise normal posture. Dr. Steiner found no spasm, normal reflexes, and no weakness of the extremities. He noted tenderness in the right lumbar paraspinous muscles and no sacroiliac or sciatic notch tenderness. The claimant did not complain of any pain radiating to the legs. The only abnormal finding was a slight restriction in motion. The knee was not swollen, just tender on the inside of the knee joint. Dr. Steiner reviewed Dr. Elmorshidy’s X-rays and found them to be normal. The physical examination did not reveal any pinched nerves, nerve root involvement, or neurological deficits. Dr. Steiner recommended a steroid injection for the knee, an exercise program for the knee, and found a temporary impairment of four to six weeks.
Dr. Steiner saw the claimant again on July 19, 1994. Claimant complained of low back pain and left thigh pain, and a tingling sensation in the left foot. Livaudais noted a popping in his left knee but no swelling, locking, or giving way of the knee. His gait and posture were normal. His range of motion in the back was the same as in the previous examination. Livaudais complained of tenderness in the midline region with light touching out of proportion to the amount of pressure applied and tenderness in the left buttocks of a similar nature. Several other tests showed a heightened response to touch where no back pain should be indicated. (Depo at p. 14.) The tests for sciatic nerve indication were inconsistent, which Dr. Steiner felt indicated an exaggeration of symptoms. Dr. Steiner felt that the patient displayed Iginconsistent and nonphy-siologic findings, and found no orthopedic findings that should prevent him from returning to work. Based upon the July 19 examination, Dr. Steiner would have released Livaudais back to work. His findings were consistent with the negative EMG and MRI.
Because of the conflicting nature of Dr. Elmorshidy’s and Dr. Steiner’s reports, the parties agreed to send Livaudais to a third physician. The parties stipulated that they both agreed to use Dr. Edmund Landry, an orthopedic surgeon. Claimant saw Dr. Landry on April 26, 1995. His deposition was introduced into the record. Dr. Landry examined Livaudais and reviewed his treatment records, noting that claimant was an elevator installer and repairman. Livaudais related the same accident history he gave to Dr. Elmorshidy. Livaudais was not wearing any braces or supports. Dr. Landry noted normal curvature of the spine and some tenderness along the left posterior iliac crest, and no muscle spasm. The neurological examination revealed normal reflexes, sensation and muscle strength, and no muscle, atrophy. The left knee exhibited no swelling, but did show some tenderness along the inner bony prominences. Claimant had normal knee motion and no instability. Dr. Landry noted a “catch” on the backside of the kneecap, which he said was not a disabling condition.
Other than Livaudais’ subjective complaints of pain, Dr. Landry noted no abnormal objective findings of the back or knee. He reviewed all the diagnostic studies, including the MRI, X-rays, and EMG, which all showed normal lumbar studies and normal left knee studies. Based upon the diagnostic studies and his own examination, Dr. Landry did not recommend any limitation of Livau-dais’ activities. He opined that Livaudais showed inconsistent results in some of the examinations he performed that indicated he was exaggerating his complaints, and had he been a private patient, he would have referred claimant for a psychiatric evaluation.
1 ¡Livaudais had not been seen by a vocational rehabilitation counselor. The adjustor *236 with the workers’ compensation carrier testified that she would not have ordered the evaluation, based upon Drs. Steiner and Landry’s findings that claimant could return to work with no restrictions.

ANALYSIS

A workers’ compensation claimant seeking temporary total disability benefits bears the burden of proving his disability, or his inability to engage in any employment, by clear and convincing evidence. LSA-R.S. 23:1221(l)(c); Comeaux v. Sam Broussard Trucking, 94-1631 (La.App. 3 Cir. 5/31/95), 657 So.2d 449. The claimant must introduce objective medical evidence to carry his burden of proving disability by clear and convincing evidence. Id.
To be entitled to receive SEBs, the claimant must establish by a preponderance of the evidence that he is unable to earn 90 percent of the wages he earned at the time of his injury, and the burden of proof then shifts to the employer who must, in order to defeat or reduce SEBs, prove that the claimant is earning less than he is able to earn. LSA-R.S. 23:1221(3)(a); Comeaux, supra.
A claimant must prove inability to work due to substantial pain by clear and convincing evidence; he does not meet his burden of proof where all the medical evidence indicates that a claimant seeking SEBs is capable of light duty work and the claimant only offers lay testimony that he is unable to work due to substantial pain. LSA-R.S. 23:1221(3)(c)(ii); Comeaux, supra.
A hearing officer’s factual findings will not be overturned on appeal absent manifest error. Monis, supra.
| ipLivaudais’ petitions do not specifically pray for SEBs; they ask that workers’ compensation benefits be paid to him. His pretrial questionnaire asks for the restoration of weekly benefits for temporary total disability. The posture of the case at trial was directed toward TTD benefits. Therefore, it does not appear that the hearing officer considered an award of SEBs.
After reviewing the testimony, doctors’ depositions, and medical records, we agree with the hearing officer that Livaudais failed to prove by clear and convincing evidence any entitlement to temporary total disability benefits after August 1, 1994 (two weeks after Dr. Steiner’s second examination). Although the diagnosis of a treating physician is generally entitled to more weight than the diagnoses of physicians consulted solely for litigation purposes, a trial court still has the power to accept or reject the opinion expressed by a medical expert depending on the impressions the expert makes upon the court. Jackson v. A. I.A., 94-371 (La.App. 5 Cir. 11/16/94), 646 So.2d 1088; Duke v. Wal-Mart Stores, Inc., 572 So.2d 191,192 (La.App. 1 Cir.1990).
All of the diagnostic studies showed normal findings in the back and knee. Dr. Steiner found no abnormal orthopedic findings to justify the claimant’s subjective complaints of pain, nor did he find any abnormal neurological findings. His records indicate that he was aware of the nature of Livaudais’ job, contrary to Livaudais’ assertions. Dr. Elmorshidy’s records show the same clinical findings on each from 1994 until January 1996, spasms and tenderness. He found no other objective symptoms of pain or disability. The MRI he ordered showed normal findings, as did the EMG study. Dr. El-morshidy did not find that Livaudais was disabled from all manual labor jobs; he felt that he should not return to this particular job. Dr. Steiner’s | ^valuation provided Montgomery with a reasonable controversion of Dr. Elmorshidy’s findings, which were themselves not indicative of disability.
Where all the physicians who examined the claimant, including the treating physician, agreed that the claimant suffered no permanent disability, and the treating physician was the only examining physician who placed restrictions on claimant’s return to work, the claimant did not carry his burden of proof regarding entitlement to SEBs. Morris v. Norco Construction Co., 632 So.2d 332 (La. App. 1 Cir.1993). We find no error in the hearing officer’s finding that claimant did not prove his entitlement to additional temporary total disability benefits.
*237 Nor do we find that claimant proved by a preponderance of the evidence his enti- ■ tlement to SEBs. Two doctors released him to work without restrictions, knowing that he was a manual laborer; Dr. Elmorshidy opined that claimant should not return to a heavy manual labor job, but that he was not disabled from other jobs. Livaudais showed no objective orthopedic or neurological abnormalities, and two doctors felt that he was exaggerating his symptoms. Claimant has not met his initial burden of proof that he cannot earn at least 90 percent of his preinju-ry wage. The consensus of all three physicians was that claimant was not disabled from working; only the treating physician placed some restrictions on the claimant’s return to work. The hearing officer’s well articulated reasons for judgment show a careful and thorough evaluation by him of the totality of the evidence. We cannot say that this evaluation was clearly wrong or manifestly erroneous.
Livaudais argues that the opinion of Dr. Landry should not be accorded prima facie evidence status of claimant’s condition pursuant to LSA-R.S. 23:1123, because Dr. Landry was not appointed by the Department of Labor to perform the IME, but rather was selected by the agreement of the parties. LSA-R.S. 23:1123 provides a | ^mechanism for the additional medical evaluation of a claimant when the parties are in dispute as to the claimant’s condition. Here, the parties agreed to appoint a third physician and further agreed as to whom that physician would be (and they are to be commended for having so agreed); we see no legal or logical reason why this physician’s opinion should be accorded less weight because the parties agreed to appoint him, than if the parties’ disagreement had compelled the Director to appoint a physician pursuant to R.S. 23:1123. This argument has no merit.
The claimant also argues that the hearing officer used the wrong standard of-proof. In his written reasons for judgment, the hearing officer makes the following findings:
“The Court feels that the medicals overwhelmingly preponderate in favor of the defendant. The claimant has failed to establish by clear and convincing evidence, that any disability persisted after August 1, 1994....”
As we mentioned above, the claimant never argued that he was entitled to SEBs. The entire thrust of his case was that he was entitled to reinstatement of weekly temporary total disability benefits. The claimant is required to prove his entitlement to temporary total disability benefits by deal’ and convincing evidence, as noted above, and thus the hearing officer did not employ the wrong standard of proof. Additionally, we find that Livaudais did not prove by a preponderance ■ of the evidence that he was entitled to SEBs.
Because we affirm the judgment, the issue of penalties and attorney’s fees are moot, and we affirm the judgment’s denial of these.
Accordingly, we affirm the judgment of the Office of Workers’ Compensation.
AFFIRMED.

. Another man on the job recommended Dr. El-morshidy to claimant.

. The doctor did not testify at trial; his records and deposition were entered into the record.

. The doctor did not testify; his records and deposition were introduced.